Gates vs. Gaither et al.

No. 11,467.

SAMUEL G. N. GATES VS. H. B. GAITHER ET AL.

An act executed in the State of Michigan, between citizens of that State, and which, by the parties to the contract, is intended to operate as a mortgage on real estate situated in the State of Louisiana, same will be given effect as a conventional mortgage, affecting third persons after due *inscription*.

In case an absentee is sought to be reached and affected by a decree appertaining to real estate situate here, the appointment of a curator *ad hoc* to represent him is jurisdictional, and the *modus operandi* of appointment must closely conform to the Constitution and law, on the pain of nullity.

APPEAL from the Eighth District Court, parish of Concordia. *Boatner, J. ad hoc.*

*Lazerus, Moore & Luce* Attorneys for Defendants and Appellees:

1. A common law mortgage, executed in a common law State, between parties residing therein, will not be given the effect of a Louisiana mortgage against third persons. C. C. 3278, 3283, 3287, 3288, 3290; 34 An. 796, 38 An. 890; 40 An. 323.
2. A common law deed will likewise not be given such effect. Same authorities.
3. A seizure under an attachment having been made prior to the recordation of the alleged common law deed, prevails against the deed.
4. A common law mortgage will not have the effect of preventing a valid adjudication by the sheriff, even though the price bid is not sufficient to discharge said common law mortgage. C. P. 679, 683, 684.

*C. L. Collins* and *Young & Young* Attorneys for Plaintiff and Appellant:

1. Notice to a party defendant by service on a curator *ad hoc* is a constructive service, in lieu of personal service, and the laws authorizing such service must be strictly followed. 10 M. 474; 6 R. 148; 8 An. 365; 9 An. 233; Am. and Eng. Encyc. of Law, Vol. 16, p. 817.
2. Sec. 6 of Act No. 43 of 1882 specifies that in all cases in which the clerk is empowered by this act to grant orders in case of the absence of the judge from the parish, or his recusation, the oath of the party or his attorney must be annexed to the petition or application. A judgment founded on a service on a curator *ad hoc* appointed by the clerk, without such affidavit, is null and void. 12 R. 542; 33 An. 76.

Gates vs. Gaither et al.

3. A judgment by default entered and confirmed without showing that the curator *ad hoc* accepted the appointment, or made an appearance in the suit, is a nullity. 2 An. 446. A judgment which is itself the object of attack for nullity can not be pleaded as *res judicata* in bar of such action. 34 An. 813; 32 An 15; 29 An. 557; 42 An. 1074; American and English Encyclopedia of Law, Vol. 21, 134.

4. A judgment against a party not legally cited is null, though the formalities of law have been complied with, unless the party was present in the parish and suffered the judgment to be executed. C. P. 612.

5. The form of a contract must be governed by the laws and usages of the place where it is passed. C. C., Art. 10; 38 An. 893.

6. It is elementary that courts of justice are bound to give effect to contracts according to their true intent and meaning. The character of a contract is to be found in the object the parties sought to accomplish rather than in the appellation they have given it. We are to look at the substance and essence of contracts, rather than to their form. Tete vs. Lanaux, 45 An. p. 1343; 14 So. Rep. 243; 5 N. S. 161; 3 An 303; 10 La. 243.

7. A common law mortgage executed in a common law State between resident citizens of that State is in the nature of a pignorative contract, by which a quasi-hypothecary right is conferred. It is recognized by the jurisprudence of this State as a contract of security, and may be enforced in a proper proceeding and showing for specific performance. Howe vs. Austin, 40 An. 323; Howe vs. Powell, 40 An. 307; 38 An. 890; 12 An. 489.

8. A debtor may validly convey his immovable property in the form of a sale, in order to secure the creditor. The continued possession by the creditor does not make the transaction void. Though in the form of a sale the conveyance does not vest the ownership in the creditor, but may give him a right to be paid out of its proceeds by priority. 31 An. 354; 1 N. S. 418; 2 N. S. 22; 14 An. 560; 5 An. 97; 8 La. 308; 10 La. 237; 1 N. S. 823; 38 An. 154; 44 An. 925.

9. The setting aside, for any cause, of the sale of an immovable made by a debtor to his creditor, who had a mortgage on the immovable, will not impair any legal rights on the property which the creditor had in virtue of his mortgage. The purchase of land can not have the effect of destroying the mortgage unless the title passes. 30 An. 1307, 1309; 8 An. 462; 13 An 601; 14 An. 590; 2 La, 551.

10. If the price offered by the highest and last bidder is not sufficient to discharge the mortgages existing on the property, and which have a preference over the judgment creditor, there shall be no adjudication. C. P., Art. 684.

---

The opinion of the court was delivered by

WATKINS, J. The co-defendant, Gaither, was originally the owner of the Criton plantation. He sold to another co-defendant, Washington, one-half interest, and to another co-defendant, Caskey, the remaining half interest. Subsequently Washington sold one-fourth interest to Caskey—he thus becoming three-fourths owner and Washington one-fourth owner.

Caskey executed to the plaintiff in Michigan, where both parties resided at the time, a common law mortgage upon his three-fourths interest, which was recorded on the 10th of March, 1891. Subse-

quently he executed to the plaintiff an act of sale to his three-fourths interest, which was recorded on the 26th of December, 1891.

Intermediately between said mortgage and sale—on the 29th of September, 1891—Gaither instituted suit against Caskey to revoke the sale of one-half interest in the land for the non-payment of the purchase price and to recover damages for the violation of his contract, and caused to be attached the one-fourth interest Caskey had purchased from Washington. Judgment was rendered dissolving the sale and sustaining attachment, and the amount of $600 damages was allowed. Subsequently this one-fourth was sold under *fi. fa.* and adjudicated to Gaither—he thus becoming invested again with three-fourths of the property and Washington remaining the owner of one-fourth. In partition suit between Washington and Gaither, there was a judgment ordering partition to be made by licitation of the Criton plantation, but no sale was made thereunder.

The following are the objects of this suit, to-wit:

*First*—The annulment of the sale of the one-fourth interest of Caskey in the Criton plantation made under attachment and *fi. fa.* in the suit of Gaither vs. Caskey.

*Second*—To obtain judgment against Caskey for $7000, and enforce against the Caskey one-fourth interest in the plantation that he acquired from Washington plaintiff's common law mortgage of March 10, 1891.

*Third*—The annulment of the judgment of partition in suit of Washington vs. Gaither *et als.*

On the trial there was a general judgment against the plaintiff and he has appealed.

I.

The averments of the petition in respect to the nullity of the judgment and sale in Gaither vs. Caskey are, 1. that said Michigan mortgage at common law has the legal effect of mortgage in Louisiana, and as such, same was in operation on the one-fourth interest in the Criton plantation *prior* to its attachment and sale; and that as said mortgage was given to secure the payment of $7000, said sale and adjudication are null, for the reason that the price of sale was insufficient to discharge the aforesaid mortgage having a preference over the attachment and sale of the judgment creditor. 2. That if said Michigan instruments are given effect as a sale of the property, then the attachment and sale were made of the property of another.

Gates vs. Gaither et al.

Gaither and Washington make common cause and unite in one answer, and they aver that "the common law mortgage and deed upon which the plaintiff sues and bases his demand has not the effect of a mortgage in Louisiana, nor the effect of a conveyance of real estate affecting third parties."

In the alternative they aver that if same ever existed it "was extinguished by payment or confusion, or by the alleged common law deed;" but this allegation is supplemented by the additional one, that if said deed was executed in alleged satisfaction of the aforesaid mortgage, same having been filed subsequent to the attachment of the property, it was without legal effect as a conveyance under the laws of Louisiana, and did not oust or divest their title derived through previous attachment and sale.

They also plead the proceedings and judgment in the partition suit of Washington vs. Gaither *et als.* as *res adjudicata* and as an estoppel.

On this statement it is clear that the *gravamen* of the controversy is the common law mortgage, and it must be determined by the legal effect that is to be given to it under the jurisprudence of this court —the deed not being recorded as a conveyance *prior* to the attachment it is without effect, and may consequently be omitted from the discussion.    This is apparently conceded by both parties.

While noting the defendant's counsel contention in brief, to the effect that while this deed unrecorded did not affect defendant's title, it extinguished any rights Gates had under his mortgage and released its grasp upon the property, we think it quite clear that it is unfounded in law—the legal effect of an avoidance of the sale being the revival of the mortgage, which formed its consideration. Chaffe vs. Morgan, 30 An. 1307, and authorities cited; American and English Encyclopedia of Law, Vol. 15, p. 319; Cooper vs. Bigly, 13 Michigan, 463; Tower vs Divine, 39 Michigan, 443.

With reference to the main question, the precept of our law is that " the form and effect of public and private written instruments are governed by the laws and usages of the place where they are passed or executed.

" But the *effect of acts passed in one country to have effect in another country is regulated by the laws of the country where such acts are to have effect."    R. C. C. 10.

We have, therefore, in the present discussion, *first*, to determine whether the form and effect of the instrument in question, under the

19*

law and jurisprudence of Michigan, is such as to constitute same a mortgage at common law; and *second*, if same is in effect a mortgage in the State of Michigan, what effect is to be given it in this State, where, by its terms, same was to have effect.

The following are the recitals of the act, viz.:

" This indenture, made this twenty-fourth day of February, in the year 1891, between Joseph C. Caskey, of the city of Saginaw, in the county of Saginaw and State of Michigan, party of the first part, and Samuel G. M. Gates, of Bay City, Bay county, State of Michigan, party of the second part,

" WITNESSETH, That the said first party, in consideration of seven thousand (7000) dollars to him paid by the second party, the receipt whereof is hereby acknowledged, has granted, sold and conveyed, and by these presents does grant, sell and convey unto the said second party and to his heirs and assigns forever, an equal undivided three-fourths interest in and to that parcel of land known as the Criton plantation, situated in the parish of Concordia and State of Louisiana, and described as bounded on the north by Tecoa, east by Helena, south by swamp, and west by Cherupa, and being the south half of southwest quarter of section twenty-four, the south half of section twenty-three, all of section twenty-five, twenty-six, twenty-seven, thirty-five and thirty-six, and containing in the aggregate 3606.45 acres of land, more or less, together with the hereditaments and appurtenances thereunto belonging or in anywise appertaining.

"And the said first party, for his heirs, executors, administrators or assigns, does covenant and agree with said second party, his heirs and assigns, that at the time of the delivery of these presents he is well seized of the above granted premises in fee simple, that they are free from all incumbrances whatever, and that he will; and his heirs, assigns, administrators and executors shall forever warrant and defend the same against all lawful claims whatever.

"*Provided*, That these presents are on the express condition that, if the said first party shall pay to the said second party all sums of money which may become due and payable from said first party to said second party at any time within one year from and after the date of these presents, according to the terms of a certain bond of even date herewith, executed by said first party and delivered to said second party, then these presents and the said bond shall cease

and be null and void. But, in case of the non-payment of the said sum or sums mentioned and described in the said bond, or the interest thereof, or any part of said principal or interest, at the time, in the manner, and at the place specified for the payment thereof, and the performance of all the conditions of the said bond, then, and in such case, it shall and may be lawful for the said party of the second part, his heirs, executors, administrators or assigns to grant, bargain, sell, release and convey the said premises, with the appurtenances, and on such sale to make and execute to the purchaser or purchasers, their heirs and assigns forever, good, ample and sufficient deed or deeds of conveyance in law, rendering the surplus moneys, if any there should be, to the said party of the first part, his heirs, executors or administrators.

" And the said party of the second part, upon payment of all sums aforesaid, and the interest thereon, according to the terms of said bond, agrees that he will forthwith execute, or cause to be executed and delivered to the said party of the first part, his heirs or assigns, a good and sufficient deed re-conveying the land above described to said party of the first part, his heirs or assigns, without fraud or delay.

" The execution and delivery of this instrument shall not hinder or prevent the said party of the first part, his heirs or assigns, from cutting, manufacturing and removing any timber now standing, or being upon the land hereinbefore described.

"*Provided*, that the security of said party of the second part shall not be impaired thereby.

" In witness whereof, the party of the first part has hereunto set his hand and seal the day and year first above written.

" JOS. C. CASKEY. (L. S.)

" Executed in presence of—
   " C. C. STEVENS,
   " J. K. STEVENS,
   " A. F. LEWIS."

From the foregoing recitals it appears that the act is one under private signature, and was executed in the State of Michigan by and between citizens of that State. That the consideration expressed is $7000 in cash had and received, for which the property was sold and conveyed. That the property described was real estate situated in the State of Louisiana—the act containing the *proviso* that if the

grantor shall pay all the sums of money due, at a time specified, the same shall be void, otherwise the grantee may sell and convey the property, and from the proceeds of the sale realize the amount due.

Taken as a whole, the act only evidences a *quasi* alienation of the *res*, and not an absolute title to the property—a *jus in re*, though of limited or qualified character, and defeasible upon the happening of the condition specified.

In McIlvane vs. Legare, 34 An. 926, this court said: "We consider it well settled that this court will take judicial notice of the well-known fact that the common law forms the basis of the jurisprudence of our sister States of this Union," etc. Citing Copely vs. Stanford, 2 An. 335; Whiston vs. Stodder, 8 M. 95; Colt vs. O'Callaghan, 2 An. 984.

Under the title of "*absolute conveyance intended as a mortgage*" in the American and English Encyclopedia of Law we find this principle announced, viz.:

"One of the most notable instances of an equitable mortgage is that of an absolute conveyance intended as security for a debt, and to have the effect of a mortgage." Page 675.

And it is supported by numerous authorities collated from various common law States

From the same work we find the description given of a common law mortgage in these words, viz.:

"A formal or common law mortgage has the component parts of a deed conveying the fee, with a condition added that it is to be void upon the payment of a specified debt, or the performance of some other designated thing.   *   *   Covenants against waste are sometimes inserted." Page 788. Citing Jones on Mortgages, Sec. 60.

Applying these precepts to the instrument in question, and the inference is clear that it is a common law mortgage.

This precept has been maintained by the Michigan court, employing these words, to-wit:

"According to the well settled rules of law a deed given to secure money lent, and redeemable by its payment, is itself a mortgage," etc.   Hurst vs. Beaver, 50 Michigan, 612.

In Jeffrey vs. Hursh, 58 Mich. 246, the principle is even more distinctly stated as applicable to the instrument under consideration.

"It is now settled," say the court, "as well as any principle of

law can be, that an absolute deed, with a bond or defeasance, or agreement executed at the same time, to reconvey the estate upon payment of a certain sum of money, constitute a mortgage, if the instruments are of the same date, or are executed and delivered at the same time, and as one transaction; and when this is the case, it is a conclusion of law that they constitute a legal mortgage." Citing Wilson vs. Shoenburger, 31 Penn. St. 295; Ruttonbough vs. Ludwick, *Id*. 131.

The two instruments under consideration—bond and deed—are contemporaneous in date and state the same identical consideration, and, consequently, same constitute a mortgage in the State of Michigan; and under an agreement of counsel, the laws and decisions of the courts of Michigan are to be considered as if they were formally introduced in evidence.

Hence, our conclusion is that the first question above propounded must be answered in the affirmative; and we must now determine what effect is to be given this act, as a mortgage in Louisiana, under the terms of our code. Art. 10. In determining the *effect* to be given to the act in the State of Louisiana, we must lose sight of its phraseology, and look to its substance alone, as the law and jurisprudence of the State of Michigan must be consulted with respect to its form; and, consulting the laws and jurisprudence of Michigan, we find its form is complete and perfect, so as to constitute the acts in question a valid mortgage, there. And finding same valid *in form*, in the State of Michigan, they must be assumed and treated as valid *in form* in Louisiana.

The essential difference between a mortgage at common law and one in Louisiana consists in the fact that the former is a *quasi* alienation and imports a delivery of possession, while the latter is a mere security without importing delivery to the mortgagee. $\frac{3}{4}$R. C. C. 3290. Such an instrument as the one in question is not, *in essence*, or *in form*, a mortgage in this State; but being a mortgage *in form and in essence* in Michigan, it must be given *effect as a mortgage* in Louisiana, where it was intended to operate and have effect.

Quite a contrariety of cases of this and similar purport have been presented to this court for investigation and decision, and it will be necessary to review and analyze some of them in order to find the settled theory of our jurisprudence on this vexed question.

In Bernard vs. Scott, 12 An. 489, the court dealt with an act quite

similar to the one under consideration, the principal question being whether it was "a sale under a condition which had become absolute," or a mortgage—the property in controversy and covered by the act being situated in Louisiana, while the parties to the act resided in the States of Mississippi and Ohio, respectively.

Of this instrument this court said:

"As the parties to the instrument were both residents in States where the common law prevails; as the instrument was executed in a common law State, and in the form adopted to create a mortgage there; and as a part of the property subject to the action of the instrument was situated in the State of Mississippi, there can be no question that the original intention of the parties to the act, the grantor and the grantee, intended to create a mortgage to secure the payment of a sum of money. Citing 2 Blackstone Com. 158, and 4 Kent's Com. 159.

The court further held that as the act covered property situated in Mississippi and Louisiana, a purchaser " was bound to inquire what effect the law would give to the same; similar instruments have been held to be mortgages of property situated in a common law State, and afterward removed here. See Sinnott vs. Russell, 1 N. S. 522.

"In the case of Hayden vs. Nutt, 4 An. 71, the court recognized an instrument similar in form, executed in the State of Mississippi, and operating on the individual interest of the grantor in a tract of land situated in the State of Louisiana, as a mortgage."

Of similar import is Watson vs. James, 15 An. 386.

In Bowman vs. McElroy, 14 An. 594, it was held that " a deed of trust executed in Mississippi and recorded in this State, which expresses that it was given to secure a certain amount  *  *  can not be enforced here against the property mortgaged, to the prejudice of other mortgage creditors, except for the amount specified."

In Miller vs. Shotwell, 38 An. 891, the decision of the court turned upon a proper construction of an act which was executed in the State of Alabama between citizens of that State on one part, and a citizen of this State on the other part, and in respect to lands situated in this State. In terms the instrument under consideration in that case was very much the same as the one under consideration in the instant case; and of it this court expressed the opinion that " the text of the instrument viewed in the light of our jurisprudence and of the laws of Alabama  *  *  leaves no doubt in our minds as

to the true intention of the parties thereto.   It was clearly to create a mortgage by way of security for the purchase price of the lands therein described.''

To the same effect is Ricks vs. Goodrich, 3 An. 212; Gause vs. Bullard, 16 An. 107, and Howe vs. Austin, 40 An. 323.   Indeed, there is no decision we can find, and there is not one to which we have been referred, which announces a contrary doctrine.

The act under consideration in Thibodaux vs. Anderson, 34 An. 797, was executed in the parish of St. James, this State, between citizens of this State, and couched in the form of a common law mortgage, or deed of trust—the property affected being situated in this State.

This act was duly recorded, and came in competition with a mortgage which was executed in the form prescribed for mortgages in this State.   Hence the question of rank, or priority, properly arose on the distribution of the assets realized from the sale of the property under executory proceedings.

Of this particular contract this court said: ''This is, indeed, the first instance of *this description* which ever was submitted to this court for determination, on a question of mortgage affecting *third* persons.

'' We do not hesitate to declare that as this nondescript act does not indicate its character, and does not clearly purport on its face to be a mortgage, third persons are not bound to ascertain its nature, object and purport, by analyzing its features by systems of reasoning which do not, with certainty, conduce to the conclusion that it is an act of mortgage.

'' It is easier to say what the act is not, than to say what it is. Whatever contract it was intended to evidence, it surely can not be claimed that it is expressive of a *mortgage* given by Anderson to Boyd susceptible of affecting *third* persons, although it might have been entitled to be considered as security between the parties.

'' Parties *contracting in this State* are required, in all their transactions affecting *immovables situated therein*, conferring or divesting real rights in such property, to *comply with the forms prescribed by the local law* and usages;    *    *    *    otherwise third persons sought to be affected thereby will not be concluded.   *Index animi verbo.*

'' Reasonable doubt as to the true character of an act will always protect effectually third parties from the operation of the same.''

From the foregoing quotation it clearly appears that the real distinction between the contract in question in that case and those examined in cases previously cited is visceral and consists in the difference in the *situs* of the contracts, and the citizenship of the contracting parties. Such a contract as the one treated of in that case does not come within the saving power of Art. ten (10) of the Civil Code, because it was not an act passed in one country or State to have effect in another country or State. But it was a contract between citizens of this State with regard to real property in this State, and couched in the terms of a common law deed of trust. Hence the entire subject-matter of the covenant came under the operation of the laws of this State, and which give no sanction to either trust-deeds or trust-estates.

The conclusion is, therefore, quite clear that, on both reason and authority, there is no incompatibility between the principle announced in Thibodaux vs. Anderson and that announced in Miller vs. Shotwell, and previous cases.

Giving to the Michigan contract the legal effect it was, by the parties, intended to have, in this State, where it was by them intended to operate, and the conclusion is irresistible to the effect that, operating *as* a mortgage under our law, its timely and proper inscription affected *third* persons and creditors of the grantor and mortgagor in this State, just as completely as if same had been couched in the form prescribed by our law. And this principle is distinctly announced in Bowman vs. McElroy.

Giving to the Michigan contract effect *as* a mortgage in this State, two consequences necessarily follow, to-wit:

*First*—That, it having been duly inscribed on the book of mortgages in the parish where the property is situated prior to the attachment of Gaither, it primed the privilege he acquired by his seizure.

*Second*—That it being a mortgage evidenced by contract, it must be given effect as a conventional mortgage under our law.

Giving to it the effect of a conventional mortgage under our law, and the amount it was given to secure being $7000 with interest, the price of sale under *fi. fa.* issued under Gaither's judgment was insufficient to cover it, and the adjudication is necessarily void *ab initio*, and conveyed no title to the purchaser. C. P. 684.

The general rule formulated under that article is, that property

specially mortgaged can not be sold at the suit of a third party unless the price bid exceed the amount of such special mortgages. For if there be no surplus of proceeds after the payment of the mortgage there is no price, and the adjudication would have no consideration.   Bacas vs. Hernandez, 31 An. 87; Dunning vs. Coleman, 28 An. 48; Hills vs. Jacobs, 7 R. 406.

II.

In view of the opinion we entertain of the Michigan contract, the plaintiff is undoubtedly entitled to its enforcement against the one-fourth interest in the Criton plantation which Caskey acquired from Washington, and subsequently attached by Gaither.   Consequently, plaintiff is entitled to personal judgment against the defendant, Caskey—he having personally appeared in the court below and answered, submitting himself to the jurisdiction of the court—for the sum of $7000, with recognition of lien and mortgage on the property described, to take date from the 10th of March, 1891, the date of recordation.

III.

With regard to the nullity of the judgment in the partition suit we are fully satisfied.

The averment of the petition is, that the suit was instituted by Washington against Gaither and petitioner—the latter being a citizen of the State of Michigan—and that no curator *ad hoc* was appointed to represent him as an absent defendant—the clerk of court having appointed an alleged curator without affidavit being made of the absence of the judge of the District Court from the parish at the time; and the record of said partition suit disclosing that the curator thus appointed neither accepted the appointment or acted under it by filing an answer, or otherwise.

The theory of plaintiff's counsel is that in such case the appointment of a curator *ad hoc* is jurisdictional; and we have so held in many cases.   It is manifestly a *sine qua non*.   Butler vs. Washington, 45 An. 279, and Young vs. Upshur, 42 An. 362.

The only means of subjecting the property to the power and jurisdiction of the court, is by citing the plaintiff as an absentee by means of a curator *ad hoc*.

The petition bears this endorsement, to-wit:

" The foregoing petition considered, it is ordered that John Dale

be appointed curator to represent the interest of Samuel G. N. Gates˙ This signed in chambers, 13th January, 1892.

"W. H. Shields,

"*Clerk of said Court.*"

This order is not preceded by any affidavit.

The Constitution confers upon the General Assembly the power "to vest in clerks of court authority to grant such orders and do such acts as may be deemed necessary for the furtherance of the administration of justice;" and it further declares that "in all cases powers thus vested shall be specified and determined." Constitution, Art. 122.

In pursuance of this constitutional authority, the General Assembly enacted a statute which provides that "in the absence of the judge from the parish, or in case of his resignation, they (clerks of District Courts) shall have power to allow interventions, grant orders o third opposition * * * appoint special tutors, or tutors *ad hoc* to minors, appoint curators and curators *ad hoc*, appoint advocates to absentees." Sec. 4 of Act 43 of 1882.

And this statute further provides that "in all cases in which the clerk is empowered by this act to grant orders in the absence of the judge from the parish, or in case of his recusation, *the oath of the party*, or of his attorney, that the judge is absent from the parish or being recused, he is unable to give the order, *must be annexed to the petition or application.*" *Id.*, Sec. 6.

The power thus vested by the Legislature in the clerks of court is particularly specified, and the *mode* of its exercise is also specified in mandatory terms, and same can not be exercised in any other manner.

There is no room for construction. The statute is plain. The requirement of the law directing the appointment of curator *ad hoc* to absentees is jurisdictional, and the manner of its observance is a rule of property.

In the case of Washington vs. Gaither there is not the least appearance of this statute having been complied with, and the result is the absolute nullity of the judgment pronounced, in so far as the present plaintiff's rights are concerned, and it is our province and duty to thus declare it.

The judgment appealed from is erroneous and must be reversed.

It is therefore ordered, adjudged and decreed that the judgment

appealed from be annulled and reversed; and it is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff (1) annulling the judicial sale of the one-fourth interest of Joseph G. Caskey in the Criton plantation, which he purchased from John Washington; (2) that he have and recover of and from the defendant Caskey the sum of $7000, with recognition of his lien and mortgage, taking date from the date of its registry, March 15, 1891; (3) annulling the judgment rendered in the partition suit of Washington vs. Gaither.

It is finally ordered and decreed that the defendant and appellee, Gaither, be taxed with the costs of both courts.