For reasons assigned, the judgment appealed from is affirmed.

---

(49 South. 526.)

No. 17,495.

PUGH et al. v. SAMPLE.

In re SAMPLE.

(April 26, 1909. Rehearing Denied May 24, 1909.)

1. SUBROGATION (§ 7*)—PAYMENT OF JUDGMENT—PROMISSORY NOTES.

Where one, not the maker, places his name on a negotiable promissory note, without "clearly indicating, by appropriate words, his intention to be bound in some other capacity," his rights and obligations are those of an indorser, and the maker of the note is the primary and principal debtor. When, therefore, a party, who is condemned by a judgment for a certain amount, executes his note, which is indorsed by other parties (who have been condemned by the same judgment, as his sureties), for the purpose of borrowing money with which to pay such judgment, the proceeds of the discount must be regarded as loaned to the maker, and the payment of such proceeds in satisfaction of the judgment as a payment by the maker.

[Ed. Note.—For other cases, see Subrogation, Dec. Dig. § 7.*]

2. MORTGAGES (§ 295*)—MERGER—DEFECTIVE TITLE—REVIVOR.

Whilst one cannot be, at the same time, owner and mortgagee of the same property, if the title which, apparently conveying perfect ownership, is supposed to destroy the mortgage, by confusion turns out to be no title, or an imperfect title, the mortgage, which was suspended, and thus apparently destroyed, upon the assumption of perfect ownership, revives; the cause of its suspension and supposed destruction no longer existing. "The effect cannot have a longer duration than the cause."

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 295.*]

(Syllabus by the Court.)

Action by J. C. Pugh and another against A. N. Sample. Judgment for defendant was reversed by the Court of Appeal, and he applies for certiorari or writ of review. Judgment of Court of Appeal reversed, and judgment of district court affirmed.

Hall & Jack, for applicant. Taliaferro Alexander, James Alston Thigpen, and Sidney Levy Herold, for respondents.

Statement of the Case.

MONROE, J. It appears that the defendant, A. N. Sample, held a mortgage for nearly $60,000 on Cotton Point Plantation, in Red river parish, executed by the owners, Mrs. Sophie R. Stringfellow, H. C. Stringfellow, and Miss Georgia Robinson; that in October, 1906, Samuel Light obtained judgment for $1,000, with interest, against the parties last named as makers, and against the plaintiffs herein, J. C. Pugh and J. D. Wilkinson, as indorsers, of a promissory note; that H. C. Stringfellow furnished in cash part of the money needed to pay the judgment so obtained, and in order to get the balance executed another note, which was also indorsed by Pugh and Wilkinson, and was discounted by one of the banks, the proceeds being placed to the credit of the account of Wilkinson, who thereupon drew his check in payment of the judgment. When the note last mentioned matured, Stringfellow paid the interest and substituted another note, similarly indorsed, in its place, and the same thing was done, from time to time, until February, 1908, when Pugh and Wilkinson paid the note maturing at that time, amounting to

$791.38. In this connection, we make the following excerpts from the testimony of Mr. Wilkinson: After stating that Stringfellow furnished some cash for the payment of the judgment, he says:

"The balance of the money was raised on a note signed by Judge Pugh and myself and H. C. Stringfellow, I think as agent."

Cross-examination:

"Q. Have you any of those notes? A. I have but one, and that is the last one. Q. Mr. Wilkinson, they are all made the same way that this one is made? A. Yes, sir; similar to that one. I would not be sure that Stringfellow signed them all as agent. Q. This one appears to be signed as agent? A. Yes, sir; the first note was for more than that amount, and that occurred [resulted?] in my overpaying the judgment $100, and after I found it out Mr. Land gave me his check, and that note had credit for that amount. I think it was $100. Q. The notes were all similar to this in form, and indorsed, unless some were signed H. C. Stringfellow, without saying 'Agent'? A. Yes, sir; The first note was indorsed by Judge Pugh himself. I indorsed some of the notes afterwards, per me."

There is no suggestion that Stringfellow was acting for any one else than himself, his wife, and Miss Robinson. In the meanwhile (between the date of the payment of the judgment and the payment of the last note; that is to say, in March, 1907) the judgment had been recorded, and is said to have taken effect as a judicial mortgage, inferior in rank to the special mortgage held by Sample, on Cotton Point Plantation, and in January, 1908, the owners and mortgagors made a conveyance of the plantation to Sample, in consideration of the surrender and cancellation of the notes held by him and secured by the mortgage mentioned. In April following Pugh and Wilkinson brought this hypothecary action to subject the plantation to the alleged judicial mortgage resulting from the inscription of the Light judgment, to the extent of the $791.38 which they had paid in February—their position in the matter being that it was they who had paid the Light judgment; that by virtue of such payment they became subrogated to the judicial mortgage resulting from the inscription of that judgment; that upon the conveyance of the mortgaged property to Sample the superior mortgage held by him became extinguished by confusion, and the judicial mortgage thus held by them was advanced to the first rank, and is now to be satisfied out of the property as though the Sample mortgage had never existed.

Defendant, Sample, for answer denies that plaintiff paid the Light judgment, and alleges that it was paid by the other judgment debtors, and ceased from that time to be a debt. In the alternative, and in case the court should hold that the judgment in question could, after thus being paid, operate as a judicial mortgage on the property of the judgment debtor, then defendant alleges that such mortgage was inferior in rank to that held by him, which latter was recorded in 1905, and was the consideration of the transfer to him of the property affected by it; and he prays that his mortgage be recognized as superior to the other and be enforced accordingly.

Opinion.

The note, upon which the money was obtained with which the Light judgment was paid, was made payable to the order of the bank, was signed by H. C. Stringfellow (either individually or as agent, we are unable to say), and bore the indorsement in blank of the plaintiffs. Under the law, as it now stands—

"a person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates, by appropriate words, his intention to be bound in some other capacity." Act No. 64, p. 157, of 1904, § 63.

As plaintiffs placed their names on the note in question (not being the makers) without indicating that they intended to be otherwise bound, their rights and obligations were those of indorsers, and ordinarily they

would have been liable to the payee or subsequent holders only on proof of presentment and demand for payment and notice of dishonor. It appears that they waived presentment for payment, demand, notice, pleas of division and discussion, etc.; but the fact remains that, apart from such waiver (which is included in the printed form upon which the note before us was executed), they were liable as indorsers only upon the failure of the maker to pay, and they acquired no rights against him until they did pay. The maker was, therefore, the principal debtor, and the circumstances that they aided him, by their signatures, to borrow the money from the bank, and bound themselves, as stated, for the debt, does not affect that question. The money that was obtained from the bank was not theirs to do with as they pleased. It was obtained for the purpose of paying a judgment for which all the parties were bound, and could not have been used for any other purpose, and, having been used for that purpose, the fact that plaintiffs were subsequently compelled, on Stringfellow's default, to make good their indorsement to the bank, did not make it any the less a payment with money borrowed by Stringfellow on their indorsement. Plaintiffs' position, so far as we can see, is no better, because of their having loaned their credit, than it would have been if they had loaned the money itself. And if they had taken the money from their pockets and loaned it to Stringfellow, and he and Mrs. Stringfellow and Miss Robinson had paid the Light judgment with it, that judgment would have been satisfied, and would at once have ceased to be a debt against those by whom it was thus paid, and, not being a debt, it could not have operated as a mortgage on their property. The judgment obtained by Light, after condemning the different parties, reads:

"And it is further ordered, adjudged, and decreed that sureties, J. C. Pugh and J. D. Wilkinson, be, and they are hereby, subrogated to all the rights of plaintiff herein, on payment of the amount of this judgment, together with all costs."

In addition to which it appears that plaintiffs, a few days later, when the judgment was paid, obtained an instrument purporting to be a subrogation from the plaintiff. But the provision for the subrogation, contained in the judgment, was superfluous, since, upon payment of the judgment, they would have been subrogated by operation of law; and the instrument that they obtained from plaintiff was of no use, since plaintiff had no power to subrogate them to his rights in a judgment which they were paying for, and with money borrowed by, the other defendants. What plaintiffs have paid, and all that they have paid, was, not the judgment in question, but a debt represented by a note dated January 15, 1908, made payable in 30 days, and signed by H. C. Stringfellow, agent, due to the Commercial National Bank, upon which note they were indorsers. The judgment in question had been paid, in the manner stated, nearly 18 months before.

Even, however, were it conceded that the Light judgment survives and operates as a judicial mortgage, the most that plaintiffs could claim would be that the property be sold, subject to Sample's mortgage as it existed at the date of the conveyance to him, as in such case his mortgage, which had been in a condition of suspended animation, would revive, and, as it seems to be understood that the property would fall considerably short of satisfying it, plaintiffs would get nothing. This view seems to have been first expressed by this court in the case of Millaudon v. Allard, 2 La. 547, where Martin, J., said:

"But the appellant's counsel urges that the mortgage creditor who purchases the premises is as if subrogated to himself, and preserves his mortgage in regard of a posterior mortgage, and the confusion which results from the purchase suspends, indeed, his mortgage, but does not absolutely destroy it. He cannot have a mortgage on his own property. This principle appears to us to be correctly established by Merlin. 13

Repertoire, verbo Subrogation de personnes, § 4. He says the effect cannot have a longer duration than the cause. If the latter be temporary only, the power cannot be perpetual."

Which means that, whilst one cannot be, at the same time owner and mortgagee of the same property, if the title which, apparently conveying perfect ownership, is supposed to destroy the mortgage, by confusion turns out to be no title, or an imperfect title, the mortgage, which was suspended, and apparently destroyed, upon the assumption of perfect ownership in the mortgagee, is revived; the cause of the supposed destruction no longer existing. This principle, we take it, underlies the decisions: In Judice v. Kerr, 8 La. Ann. 462, in which it appears that, though a conveyance from the husband to the wife was set aside, the right of the wife to assert her legal mortgage on the property so conveyed was reserved. In Wilson v. Curtis, 13 La. Ann. 601, where, it having been found that a sale by one Blacketer to Wilson of certain property, which had been attached by Curtis on a claim against Blacketer, was simulated and fraudulent, it was held that Wilson was entitled to be heard in the assertion of certain mortgage and privileged claims on the same property. In Chaffe & Bro. v. Morgan, 30 La. Ann. 1307, in which it was held (quoting from the syllabus):

"The setting aside, for any cause, of the sale of an immovable, made by a debtor to his creditor, who had a mortgage on the immovable, will not impair any legal rights on the property which the creditor had in virtue of his mortgage."

In New Orleans Insurance Association v. Labranche, 31 La. Ann. 841, where the court said:

"Our Revised Civil Code provides, in article 3409, which is similar to Code Napoleon 2147: 'The servitudes and incorporeal rights which the third possessor holds on the property, before his possession of it, are revived, after his relinquishment or after the sale, made under execution againt him.' Under this unambiguous provision, were Montegut evicted, by the benevolence of the lawmaker, would come the restitutio ad integrum. The annullment or rescission of the sale would have the effect of placing the parties in the position they held before the sale; each party being restored to the rights he then had and abandoning those which had, ineffectually, been transported [transferred] to him."

And in the cases of Spencer & Goodman v. Bradfield, 33 La. Ann. 909, Dawson v. Thorpe, 39 La. Ann. 366, 1 South. 686, Gates v. Gaither, 46 La. Ann. 289, 15 South. 50, Harrison v. Ottman, 111 La. 740, 35 South. 844. And so, in the instant case, if the defendant did not, by virtue of the conveyance to him, get a perfect, unincumbered title to the property in question, his mortgage was not destroyed by confusion.

If he did get such a title, then the property is not incumbered by the judicial mortgage set up by plaintiffs.

We therefore conclude that there is error in the judgment of the Court of Appeal, reversing the judgment of the district court in favor of the defendant, and it is accordingly ordered, adjudged, and decreed that said judgment of the Court of Appeal be avoided and reversed, and that the judgment of the district court be affirmed; plaintiffs to pay all costs.