# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-570

OUPAC, INC.

VERSUS

JANET A. CARMOUCHE, BOB MCDANIEL,
AND CATHERINE SOILEAU MCDANIEL

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 78,705-B
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**CHARLES G. FITZGERALD**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

**REVERSED AND RENDERED.**

**Bruce A. Gaudin**
**Attorney at Law**
**100 West Bellevue Street**
**Opelousas, Louisiana 70570**
**(337) 948-3818**
**Counsel for Plaintiff/Appellant:**
**Oupac, Inc.**

**Marcus L. Fontenot**
**Fontenot & Ludeau, LLC**
**Post Office Box 69**
**Ville Platte, Louisiana 70586**
**(337) 363-2388**
**Counsel for Defendants/Appellees:**
**Bob McDaniel**
**Catherine Soileau McDaniel**

**FITZGERALD, Judge.**

This appeal involves the ranking of a vendor's privilege, conventional mortgage, and judicial mortgage on immovable property sold by credit sale and reacquired by dation en paiement.

### FACTS AND PROCEDURAL HISTORY

The facts in this case are not in dispute. On October 16, 2008, Oupac, Inc. (Oupac) obtained a money judgment against Janet Carmouche (Carmouche) for the principal sum of $6,795.64. On October 21, 2008, this judgment was filed with the recorder for mortgages for Evangeline Parish. The recordation created a judicial mortgage over all present and future immovable property owned by Carmouche in that parish.[1]

On November 13, 2013, Bob McDaniel and Catherine Soileau McDaniel (the McDaniels) sold to Carmouche by credit sale two tracts of land located in Evangeline Parish. The purchase price was fully financed by the McDaniels. In connection with the purchase, Carmouche signed a promissory note, and her obligation to pay the note was secured by a conventional mortgage granting the McDaniels a security interest in both tracts of land. The credit sale and conventional mortgage were combined into a single written instrument styled "Sale and Mortgage." The Sale and Mortgage was recorded in the conveyance and mortgage records that same day (November 13, 2013).

Less than five months later, Carmouche defaulted on her note payments. On March 31, 2014, Carmouche and the McDaniels executed a dation en paiement, which transferred ownership of both tracts of land back to the McDaniels. In the dation, Carmouche warranted clean title to the property, and the McDaniels accepted

---

[1] In September 2018, a judgment of revival was signed and recorded.

the property "in full acquittance and discharge of the indebtedness." Thereafter, on June 18, 2014, the dation was recorded in the conveyance and mortgage records of Evangeline Parish. In conjunction therewith, the McDaniels also filed with the recorder of mortgages a request for cancellation of mortgage. Attached to this request was Carmouche's original promissory note; the face of the note was marked "PAID PER DATION 3/31/14 by Catherine McDaniel."

On March 16, 2020, Oupac filed a concursus proceeding against Carmouche and the McDaniels to determine the validity and ranking of the privileges and mortgages—including its (Oupac's) judicial mortgage—on the property conveyed in the dation en paiement. A bench trial was held on July 14, 2020. At the close of evidence, the trial court ruled that the McDaniels had a "valid first lien by virtue of their vendor's privilege recorded on November 13, 2013," and that Oupac had a "valid second lien by virtue" of its judicial mortgage. That ruling was reduced to written final Judgment signed on December 1, 2020. This appeal by Oupac followed.

In its sole assignment of error, Oupac asserts as follows:

> The trial judge was clearly wrong when he failed to recognize that the vendor's lien and the mortgage contained within the sale and mortgage by Bob McDaniel and Catherine Soileau McDaniel to Janet A. Carmouche on November 13, 2013, were canceled by the express language of the dation en paiement recorded on June 18, 2014, and by the cancellation of mortgage, accompanied by the paid note, filed on the same day, and that as a result, the 2008 judgment in favor of Oupac, Inc., revived in 2018, is entitled to priority ranking against the property now owned by Bob McDaniel and Catherine Soileau McDaniel.[2]

---

[2] In their original appellee brief, the McDaniels request attorney fees for work performed on this appeal. However, attorney fees are only recoverable when permitted by law or contract, and neither applies in this matter. An appellee must also file an answer to an appeal if "he desires to have the judgment modified, revised, or reversed in part." La.Code Civ.P. art. 2133(A). Since the McDaniels have not answered the appeal, their request for attorney fees is not properly before this court. *Lysinger v. Sec. Indus. Ins. Co.*, 488 So.2d 353 (La.App. 3 Cir.), *writ denied*, 493 So.2d 638 (La.1986).

## LAW AND ANALYSIS

In this appeal, our review is not premised on any factual findings made by the trial court. Because we are reviewing only questions of law, we employ the de novo standard of review. *Navarre Chevrolet, Inc. v. Begnaud*, 16-465 (La.App. 3 Cir. 11/2/16), 205 So.3d 973, *writ denied*, 16-2122 (La. 1/13/17), 215 So.3d 248.

### A. Vendor's Privilege

Oupac concedes that a vendor's privilege in favor of the McDaniels was created by operation of law when the credit sale was executed and recorded on November 13, 2013. Oupac also concedes that the vendor's privilege was superior to its judicial mortgage at that time. Oupac argues, however, that the vendor's privilege was extinguished by the dation en paiement, which transferred ownership of the immovable property back to the McDaniels in full satisfaction of Carmouche's indebtedness. We agree.

The vendor's privilege on immovable property is established by La.Civ.Code art. 3249. That article identifies two types of "[c]reditors who have a privilege on immovables . . . [including the] vendor on the estate by him sold, for the payment of the price or so much of it as is unpaid, whether it was sold on or without a credit." *Id.* While we acknowledge that secondary sources are not controlling, we find that the following treatise excerpt is helpful and relevant:

> The vendor's privilege is a distinct right that arises in every credit sale by operation of law. This privilege is an accessory to the seller's right to collect the price. A seller's assertion of his vendor's privilege would be made in conjunction with his action to collect the price; accordingly, the vendor's privilege is a legal right granted to the seller in pursuance of the remedy of specific performance.
>
> As between the seller and the buyer, the vendor's privilege exists as to both movables and immovables without the necessity for the seller to take any action to preserve the privilege. . . . In order to assert the vendor's privilege [on immovables] against third persons, the sale must be filed in the mortgage records of the parish in which the immovable is situated.

D. Tooney-Knoblett & D. Gruning, 24 La. Civ. L. Treatise, Sales § 15:8 (2020) (footnotes omitted).

On November 13, 2013, the credit sale between the McDaniels and Carmouche was executed and recorded. The vendor's privilege in favor of the McDaniels came into existence and was effective against third parties, such as Oupac, on that date. La.Civ.Code art. 3274.

Significantly, on March 31, 2014, ownership of the two tracts of land was transferred back to the McDaniels by dation en paiement. In the dation, the McDaniels accepted the property "in full acquittance and discharge of [Carmouche's] indebtedness." The dation and an accompanying request for cancellation of mortgage were filed with the recorder of mortgages on June 18, 2014. Carmouche's original promissory note, which had been marked "PAID PER DATION 3/31/14 by Catherine McDaniel," was attached to the request for cancellation of mortgage.

Louisiana Civil Code Article 3277 states, in pertinent part, that "[p]rivileges become extinct . . . [b]y the creditor acquiring the thing subject to it . . . [or b]y the extinction of debt which gave birth to it." Here, the creditor (the McDaniels) reacquired the immovable property—the thing subject to the vendor's privilege— the moment the dation was executed. This, standing alone, extinguished the vendor's privilege. Also, the dation and accompanying recorded documents evidence the extinction of the promissory-note indebtedness; this is the debt which "gave birth" to the vendor's privilege. The extinction of this debt also destroyed the vendor's privilege.

**_B. Ranking of Mortgages_**

On October 21, 2008, Oupac recorded its money judgment against Carmouche. On November 13, 2013, the Sale and Mortgage between Carmouche and the McDaniels was signed and recorded, thereby creating a vendor's privilege *and*

4

conventional mortgage in favor of the McDaniels. The vendor's privilege was discussed in the previous section of this opinion.

In general, a "[m]ortgage is a nonpossessory right created over property to secure the performance of an obligation." La.Civ.Code art. 3278. A mortgage is an indivisible real right that burdens and follows the mortgaged property into whatever hands the property may pass. La.Civ.Code art. 3280. A mortgage is accessory to the obligation it secures. La.Civ.Code art. 3282.

There are certain rules that are particular to conventional mortgages. For example, a conventional mortgage can only be established by written contract. La.Civ.Code art. 3287. However, the "contract of mortgage need not be signed by the mortgagee, whose consent is presumed and whose acceptance may be tacit." La.Civ.Code art. 3289. "A conventional mortgage may be established only by a person having the power to alienate the property mortgaged." La.Civ.Code art. 3290. In the absence of specific legislation, a conventional mortgage is classified as a "special mortgage," meaning that it "burdens only certain specified property of the mortgagor." La.Civ.Code art. 3285.

There are also rules that are particular to judicial mortgages. A judicial mortgage, for instance, secures a judgment for the payment of money. La.Civ.Code art. 3299. Unlike a conventional mortgage, which is created by contract, a judicial mortgage is created by filing a money judgment with the recorder of mortgages. La.Civ.Code art. 3300. A judicial mortgage is also a "general mortgage," meaning that it is "established over property that the obligor owns when the mortgage is created and over future property of the obligor when he acquires it." La.Civ.Code art. 3303; *see also* La.Civ.Code art. 3285 ("A general mortgage burdens all present and future property of the mortgagor.").

Louisiana Civil Code Article 3307 lays the foundation for the ranking of mortgages, providing that "the mortgagee is preferred to . . . others whose rights become effective after the mortgage becomes effective as to them." A mortgage becomes effective as to a third person when it is recorded in the appropriate mortgage records. La.Civ.Code arts. 3338.

As explained in the following practice series excerpt:

[A]ll mortgages rank in the order they are filed in the mortgage records in the parish where the real estate is located. That mortgage which is recorded first has priority over subsequently recorded mortgages. . . . [C]onventional, judicial and legal mortgages are all on the same footing. *Thus, a judicial mortgage recorded on July 1 will prime a conventional mortgage recorded on July 2, which will in turn prime a subsequent judicial mortgage recorded on July 3*.

Peter S. Title, 1 La. Prac. Real Est. § 15:2 "Mortgage priority" (2d ed. 2020) (emphasis added).

The ranking of mortgages is also addressed in the revision comments to La.Civ.Code art. 3300. That article addresses the creation of judicial mortgages. The revision comments provide, in relevant part:

Recordation creates the mortgage as a right in favor of the creditor and establishes it over the property then owned by the debtor. If the debtor does not then own property, the mortgage exists as a right in favor of the creditor to a mortgage over the future property of his debtor, and is then imposed (established) over particular property when the debtor acquires it. Consequently, although such mortgages take their effect as to third persons from the time of recordation, they do not constitute a charge upon any particular property until it is acquired by the debtor. *The mortgage, being effective as to the judgment debtor and being recorded will rank ahead of any other charges imposed by the debtor over the property after the judgment is recorded, even as to future property*.

La.Civ.Code art. 3300, 1992 Revision Comment (emphasis added).

In this case, Oupac recorded its money judgment against Carmouche on October 21, 2008. The judicial mortgage was in effect at the time of the credit sale on November 13, 2013. The signing and recordation of the Sale and Mortgage gave

6

rise to two security devices: first, a vendor's privilege which was created by operation of law; and second, a conventional mortgage. At the time of recordation (on November 13, 2013), the vendor's privilege in favor of the McDaniels was superior to Oupac's judicial mortgage because of La.Civ.Code art. 3274, which is a rule of ranking limited to "privileges."[3] But was the conventional mortgage in favor of the McDaniels also superior to Oupac's judicial mortgage? The answer is no. The conventional mortgage was recorded five years after Oupac recorded its money judgment against Carmouche.

In sum, once the Sale and Mortgage was properly recorded, the vendor's privilege, conventional mortgage, and judicial mortgage ranked as follows: the McDaniels' vendor's privilege ranked first; Oupac's judicial mortgage ranked second; and the McDaniels' conventional mortgage ranked third.

C. *Extinguishment of the Conventional Mortgage*

Oupac claims that the conventional mortgage in favor of the McDaniels was extinguished by confusion as a result of the dation en paiement. We agree.

A dation en paiement "is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt." La.Civ.Code art. 2655. "An act of giving in payment . . . has the effect of transferring title the same as the ordinary contract of sale." *Quality Fin. Co. of Donaldsonville v. Bourque*, 315 So.2d 656, 658 (La.1975). Hence, a creditor who receives ownership of property by dation will acquire the property subject to any recorded encumbrances, whether superior or inferior to that of the creditor. *Id*.

---

[3] Louisiana Civil Code Article 3274 states:

> No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded within seven days from the date of the act . . . .

The dation here was perfected between the McDaniels and Carmouche on March 31, 2014. At the time of the dation (and at all times thereafter), the mortgage records of Evangeline Parish reflected Oupac's judicial mortgage. Thus, when the McDaniels reacquired ownership of the immovable property, they did so subject to Oupac's judicial mortgage.

Turning now to confusion, it is well-settled that when a creditor receives ownership of property following a dation en paiement, the mortgage held by the creditor on the subject property is extinguished by confusion. La.Civ.Code art. 3319(2) ("A mortgage is extinguished . . . [b]y confusion as a result of the obligee's acquiring ownership of the thing mortgaged."); *see also* La.Civ.Code art. 1903 ("When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion.").

The dation at issue expressly states:

Debtor [Carmouche] hereby makes unto the Creditor [the McDaniels] a dation en paiement, by hereby transferring, conveying, delivering, granting, assigning, and setting over unto the Creditor, here present and accepting, and acknowledging due delivery and possession thereof, the following described property:

. . . .

This transfer and conveyance of said property b[y] Debtor is made and accepted for and in consideration of the indebtedness and is received by the Creditor in full acquittance and discharge of the indebtedness.

When the dation was executed on March 31, 2014, the creditor (the McDaniels) reacquired unconditional ownership of the immovable property. By operation of law, the conventional mortgage was extinguished by confusion at this time. *See* La.Civ.Code art. 3319(2).

There is also a second basis for the extinguishment of the conventional mortgage. Louisiana Civil Code Article 3319(7) provides: "A mortgage is

8

extinguished . . . [w]hen all the obligations, present and future, for which the mortgage is established have been incurred and extinguished." Our supreme court has explained that "a conventional mortgage is an accessory security device. It is founded upon a principal debt, which it secures, and when the principal debt is extinguished, the mortgage disappears." *Thrift Funds Canal, Inc. v. Foy*, 261 La. 573, 260 So.2d 628, 630 (1972) (citations omitted).

The conventional mortgage in favor of the McDaniels secured Carmouche's promissory-note indebtedness. The dation and accompanying recorded documents evidence the extinction of this principal debt. Because the debt owed by Carmouche was extinguished, so too was the conventional mortgage in favor of the McDaniels. "Once the mortgage has ceased to exist by operation of law, it is dead for all purposes and all time." *Baton Rouge Wood Prods., Inc. v. Ezell,* 194 So.2d 372, 377 (La.App. 1 Cir. 1966).[4]

### D. Whether the Conventional Mortgage was Revived

The McDaniels assert that their conventional mortgage has been revived. In support, they argue that "if a mortgagee takes title to property covered by its mortgage and it subsequently appears that an inferior encumbrance still affects that property, its mortgage is revived with each party being restored to its former rights." The McDaniels cite three cases to support their assertion: *Third Dist. Bldg. Ass'n v. Forschler*, 174 La. 828, 141 So. 849 (1932); *Pugh v. Sample*, 123 La. 791, 49 So. 526 (1909); and *Cook v. LeMoine*, 149 So. 263 (La.App. 2 Cir. 1933).

In *Forschler*, 141 So. 849, the dation en paiement was annulled for want of consideration. The annulment had the effect of restoring the parties to the position they held prior to the dation. *Id*. Thus, the confusion was regarded as never having

---

[4] Even if the McDaniels' conventional mortgage survived the dation, the conventional mortgage would have remained inferior to Oupac's judicial mortgage.

9

occurred, and both the indebtedness and mortgages securing it were revived. *Id*. In support of its ruling, the supreme court explained:

> In *Pugh v. Sample*, 123 La. 791, 49 So. 526, 39 L. R. A. (N. S.) 834, it was held, as stated in the syllabus: "Whilst one cannot be, at the same time, owner and mortgagee of the same property, if the title, which, apparently conveying perfect ownership, is supposed to destroy the mortgage, by confusion turns out *to be no title, or an imperfect title*, the mortgage, which was suspended, and thus apparently destroyed, upon the assumption of perfect ownership, revives; the cause of its suspension and supposed destruction no longer existing. 'The effect cannot have a longer duration than the cause,'" citing *Millaudon v. Allard*, 2 La. 547 [(1831)].

*Id.* at 850 (emphasis in original).

In *Pugh*, 49 So. 526, the original owners of Cotton Port Plantation executed a mortgage in favor of the defendant securing nearly $60,000 in debt. A money judgment was later obtained by a third party against the plantation owners. Once recorded, a judicial mortgage was created although inferior in rank to the mortgage held by the defendant. *Id*. Thereafter, the owners conveyed the plantation to the defendant by dation en paiement in consideration of the surrender and cancellation of the notes held by the defendant that were secured by the mortgage. The plaintiffs then filed suit to execute on the judicial mortgage. The plaintiffs argued that they had paid the money judgment on behalf of the original plantation owners; that by virtue of their payment they became subrogated to the judicial mortgage; that following the dation, the first mortgage held by the defendant was extinguished by confusion; that the judicial mortgage has therefore been advanced to the first rank; and that the judicial mortgage is now to be satisfied out of the property as though defendant's mortgage never existed. *Id*.

The supreme court disagreed, concluding that the money judgment at issue had been paid by the original plantation owners prior to the dation. *Id.* Once paid, it

could not have operated as a mortgage on their property, including the plantation. *Id.*

After deciding the issue before it, the court then posited as follows:

> Even, however, were it conceded that the [money] judgment survives and operates as a judicial mortgage, the most that plaintiffs could claim would be that the property be sold, subject to [the defendant's] mortgage as it existed at the date of the conveyance to him, as in such case his mortgage, which had been in a condition of *suspended animation*, would *revive*, and, as it seems to be understood that the property would fall considerably short of satisfying it, plaintiffs would get nothing.

*Id.* at 528 (emphasis added).

During the 112 years since *Pugh* was decided, there have been very few cases that have applied the above remedy. Of these cases, there are two different types. The first type involves the rescission of the dation en paiement, or the giving in payment. In these cases, the parties are restored to the positions they held prior to the dation. These decisions are consistent with legislation. *See* La.Civ.Code art. 2033 ("An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made."). *Forschler* is an example of this type of case.

The second type is problematic. Ordinarily, if a person holding a conventional mortgage over property acquires the property, the mortgage is extinguished by confusion. However, the second type of case suggests that if the property is subject to an intervening right by a third person (such as a judicial mortgage) and the enforcement of that right subsequently divests the owner of his property, the conventional mortgage is revived under *Pugh*.[5] This is a legal fiction. It is an equitable remedy not based in legislation. Even if the first mortgage is not

---

[5] An example of this type of case is *Cook v. LeMoine*, 149 So. 263.

11

extinguished by confusion, the debt it secures has been extinguished. This situation was not addressed in *Pugh*.

Importantly, there is a commonality between the two types of cases discussed above. In both instances, the person who receives ownership of property in consideration for the satisfaction of a debt is subsequently divested of ownership. In contrast, the dation between Carmouche and the McDaniels has not been annulled, nor has the immovable property conveyed therein been seized and sold.

The McDaniels are making an equitable argument not based in legislation. It is an equitable remedy that stands in direct conflict with a fundamental principle of law. A mortgage is accessory to the obligation it secures. Without the principal obligation, there can be no mortgage. For that reason, unless the McDaniels can rescind the dation en paiement and revive both the promissory-note indebtedness and the conventional mortgage securing it, there is no basis for the assertion that the mortgage has been revived. We therefore decline to apply *Pugh* to the facts of this case.[6]

### DECREE

For the foregoing reasons, we reverse the trial court's judgment and render that Oupac, Inc. has a valid first lien on the property at issue pursuant to its judicial mortgage, which was recorded on October 16, 2008, and revived on September 26, 2018. All costs associated with this appeal are assessed to the Appellees, Bob McDaniel and Catherine Soileau McDaniel.

**REVERSED AND RENDERED.**

---

[6] Even if the McDaniels' conventional mortgage is revived, the conventional mortgage would remain inferior to Oupac's judicial mortgage.

12