THADDEUS S. GIBBS v. ERNEST W. JOHNSON.

*Mortgage—Purchase of equity of redemption—Merger.*

Where, upon the purchase by a mortgagee of the equity of redemption, it is agreed between the mortgagor and mortgagee that the latter shall retain possession of the note and mortgage for the purpose of cutting off by foreclosure a subsequent levy made upon the mortgaged premises, equity will treat the estates as separate, and, after foreclosure, will, at the suit of the mortgagee, set aside said levy and a sale made thereunder as a cloud upon his title.

Appeal from Kent. (Grove, J.) Argued January 24, 1895. Decided February 12, 1895.

Bill to quiet title. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*N. O. Griswold,* for complainant.

*Frank G. Holmrs,* for defendant.

LONG, J. On June 5, 1884, Mary J. Anderson owned 60 acres of land, and on that date she gave a mortgage to Mary A. Miller of $500. On October 7 following, William J. Anderson, the husband of Mary J. Anderson, owned about 105 acres adjoining the land of his wife. On this land complainant had a mortgage of $1,000 given before Anderson purchased. On that date, October 7, 1884, William J. Anderson and his wife gave a mortgage to complainant on all their land for $2,550, subject to the mortgage of $1,000 and the Miller mortgage. On June 4, 1890, complainant purchased the Miller mortgage, and took an assignment. There was then due him on the three mortgages, for principal and interest, about the sum of $4,000. The Andersons then deeded the lands to the complainant, and he gave them back a contract in writing, in which it was agreed that the Andersons might occupy the lands until the 1st day of April, 1891; they agreeing to pay the taxes, make some repairs, and pay $400 within that time to complainant upon the amount due him. The complainant held possession of all the mortgages and notes, but agreed to surrender them when they were all paid, and to reconvey the premises to the Andersons. Anderson remained in possession of the premises, but made no payments under his last contract. On November 14, 1890, complainant foreclosed this $2,550 mortgage, which covered the entire premises, by advertisement, and received a sheriff's deed. This deed became absolute November 14,

1891.   The Andersons remained in possession until February
or March, 1892, when the complainant went into posses-
sion, and has since continued to occupy the premises.   It
is claimed by the complainant that he never intended that
the mortgage interest held by him should merge into the
title conveyed to him by the deed from the Andersons.

It appears that in 1886 the Andersons became indebted
to William B. Johnson, for which indebtedness they gave
him a promissory note.   Mr. Johnson thereafter died, and
Jennie A. Johnson, his wife, being appointed administra-
trix, commenced suit in justice's court on the note against
the Andersons, and obtained a judgment of $249.50.   A
transcript of this judgment was thereafter filed in the
circuit court, and an execution issued thereon, and levied
upon the lands of the Andersons.   This levy was subject
to the mortgages of complainant.   Mrs. Johnson, as
administratrix, assigned the judgment to the defendant.
After complainant's foreclosure was completed, and he had
gone into possession of the premises, the defendant adver-
tised the premises for sale on the Johnson levy, and on the
sale he bid the premises in, received the usual certificate
of sale, and filed it in the office of the register of deeds.
The bill in this case was then filed by complainant to set
aside this levy and sale as a cloud upon his title.   The
proofs were taken in open court, and a decree entered in
favor of complainant as prayed in his bill.   Defendant
appeals.

Unless the complainant's mortgage interest merged into
the title acquired by his deed from the Andersons, this
decree must stand.   The complainant testifies that after
the deed was executed he learned of this levy; that he then
took the advice of counsel on the subject, and was informed
that he could take the deed, and it would not stand in
the way of his foreclosing his mortgages and perfecting his
title in that way; that it was agreed with the Andersons

that he might hold the notes and mortgages for that purpose. Mr. William J. Anderson also testified that he agreed that complainant might keep the notes ·and mortgages for the purpose of foreclosing them and perfecting his title. There is some evidence in the record contradicting this, and from which· defendant contends that there was no arrangement of this kind, and that the real intent of the parties was to cancel and surrender the notes and mortgages upon the giving of the deed. But we think the evidence shows very conclusively that the parties to the transaction understood that this levy was in the way of a perfect title to the complainant under the deed, and that a foreclosure of the mortgages would be necessary to cut off the levy. This position is strengthened by the fact that complainant did in fact retain possession of the notes and mortgages, and subsequently foreclosed the largest mortgage for the very purpose for which he contends he retained it.

There were several other levies on the land, but the Johnson levy was the one under which the sale was made. All these levies were put on subsequent to the complainant's mortgage which was foreclosed, and it is clear that complainant intended to cut them off by the foreclosure. It is certain that under these circumstances the rights of the complainant required that his interests under the mortgages be kept separate. In *Cooper v. Bigly*, 13 Mich. 478, it was said:

"The doctrine is too familiar to need authorities that a mortgage is not merged by a purchase of a partial or entire interest in the equity of redemption, where there are intermediate rights, or where the interests of the mortgagee require the title to be kept separate."

In *Snyder v. Snyder*, 6 Mich. 472, it was said:

"The authorities are quite uniform that the holder of a mortgage interest shall lose no substantial rights by becoming the owner of the equity of redemption."

The same rule was laid down in *Tower v. Divine,* 37 Mich. 445, and *Cook v. Foster,* 96 Id. 610.

In *Moore v. Luce,* 29 Penn. St. 260, 263, the court held that—

" Merger takes place when a greater and a less estate come together in the same person, and ·when there is no reason for their longer existence as separate estates."

Equity will treat the estates as separate when it is shown that the party intended they should be so kept, and the intent to keep them separate will be presumed whenever it is to his interest so to keep them, although his actual intent is not shown. Jones, Mort. §§ 848–873. But in the present case we think the evidence clearly establishes the fact that it never was intended by the parties that the titles should merge. If the parties interested in these levies had any right, it was to redeem from the mortgages.

The decree must be affirmed, with costs.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.