## ANDERSON *v.* THOMPSON.

1. MORTGAGES—GRANTEE ASSUMING MORTGAGE NOT TO BE SUED AS FOR A DEBT — LIABILITY LIMITED TO DEFICIENCY ARISING ON FORECLOSURE.

A grantee may not be sued upon a covenant to pay an existing mortgage as for a debt due the mortgagee, but his personal liability may only be enforced for the deficiency arising on a foreclosure in equity.

2. SAME—MORTGAGEE'S INTEREST NOT MERGED IN HIS TITLE IN FEE UNLESS HE SO INTENDS.

> When the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter unless it is to the interest of the mortgagee, and it is his intention, to keep the mortgage alive; in which case there is no merger unless the rights of the mortgagor or third persons are affected thereby.

3. SAME.

> That defendant, previous to obtaining title to land under foreclosure of a third mortgage, was the assignee of the first mortgage, which he had assumed on purchasing the land, his titles thereunder did not merge so as to give the subsequent purchaser under foreclosure of the second mortgage a title free from the lien of the first mortgage; it being to defendant's interest that the titles be kept separate.

Appeals from Van Buren; Des Voignes (L. Burget), J. Submitted October 12, 1923. (Docket No. 94.) Decided November 13, 1923.

Bill by Oscar E. Anderson against Charles W. Thompson to remove a cloud upon the title to land. From the decree rendered, both parties appeal. Reversed, and bill dismissed.

*David Anderson,* for plaintiff.

*Jackson, Fitzgerald & Dalm,* for defendant.

SHARPE, J. In 1911, Warren J. Miller and his wife conveyed 40 acres of land in Van Buren county, then owned by them, by warranty deed to Hans Olson. Olson mortgaged this land to Miller for $900 to secure a part of the purchase price. This will hereafter be referred to as the "Miller mortgage." In 1912, Olson gave a second mortgage on this land to the plaintiff. It will be referred to as the "Anderson mortgage." In 1916, Olson conveyed this land to

the defendant, Thompson, by warranty deed.     This deed contained the following agreement, inserted as a part of the covenant of warranty:

"that they are free from all incumbrances whatever except two certain mortgages, one for eight hundred dollars and the other for two hundred and fifty dollars, which said mortgages, together with accrued interest thereon, second party hereby assumes and agrees to pay."

The mortgages referred to are the Miller mortgage, on which $100 had been paid, and the Anderson mortgage.     Thompson then owned an adjoining 12 acres and in 1917 he conveyed the 52 acres to Jasper Bunschoten.     The warranty clause contained what is conceded to be an assumption by Bunschoten of these two mortgages.     He also executed to Thompson a third mortgage for $1,050, covering the 52 acres. In 1919, Thompson secured an assignment to him of the Miller mortgage.     Default in payment on the third mortgage having been made by Bunschoten, Thompson foreclosed the same by advertisement and bid in the property, the deed becoming operative on October 7, 1921.     In the meantime, Anderson foreclosed his mortgage by advertisement.     He purchased at the sale.     His deed became operative on November 27, 1921.

Plaintiff, Anderson, under the claim that this deed vested the complete title in him, filed this bill to remove the Miller mortgage, which, as before stated, had been assigned to the defendant, Thompson, as a cloud upon his title.     Defendant, answering, asserts that this mortgage is still a valid and subsisting lien on said property.     The trial court decreed that the Miller mortgage be canceled and discharged unless the defendant within three months should pay to plaintiff the principal and interest due on his mortgage computed to that time, the costs of the foreclosure sale, and the costs of the present suit, and that on such

payment plaintiff should execute a quitclaim deed of the land to the defendant.     Both parties appeal.

While the decree made would seem to be a fair and reasonable adjustment of the rights of the parties, we are persuaded that it cannot stand.     The foreclosure by plaintiff was regular and his deed thereon cut off all the rights of the defendant to title in said land, except as to any lien he might have thereon under the Miller mortgage.     Plaintiff strenuously insists that when defendant's foreclosure deed became operative in October, 1921, he then had the legal title to the land and his rights under the Miller mortgage became merged therein.     He also contends that as Thompson in his deed from Olson covenanted and agreed to pay the Miller mortgage, the assignment of such mortgage to him but amounted to a payment thereof and that it ceased to be a lien on the premises thereafter; that Thompson now but stands in the shoes of Olson, who gave both mortgages, and that his rights were cut off by the foreclosure.

The effect of a covenant by a grantee to pay an existing mortgage has been many times considered by this court.     That he cannot be sued upon such a promise as for a debt due the mortgagee is well established.     His personal liability can only be enforced for the deficiency arising on a foreclosure, in equity. *Corning* v. *Burton,* 102 Mich. 86, and note thereto, in which the earlier cases are collected.     *Federal Bond & Mortgage Co.* v. *Shapiro,* 219 Mich. 13, is distinguishable.     In that case the right of an assignee of the grantor with whom the covenant was made was presented.

There was, therefore, no personal liability on the defendant to pay either the Miller mortgage or plaintiff's mortgage, except as to a deficiency arising on a foreclosure sale in equity.     When defendant's foreclosure deed became operative in October, 1921, he owned the legal title, subject to the two mortgages.

He had theretofore acquired the Miller mortgage by assignment.    There is no doubt about the general rule that when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter.    This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby.    19 R. C. L. p. 484.    This exception to the general rule has been considered and relief granted under it by this court in the following cases: *Snyder* v. *Snyder,* 6 Mich. 470; *Cooper* v. *Bigly,* 13 Mich. 463; *Tower* v. *Divine,* 37 Mich. 443; *Cook* v. *Foster,* 96 Mich. 610; *Gibbs* v. *Johnson,* 104 Mich. 120; *Quick* v. *Raymond,* 116 Mich. 15.    In *Cook* v. *Foster,* 96 Mich. 610, 613, it was said:

"It is the well-established rule, in determining the question of merger, that the intent is the controlling consideration.    If it be for the interest of him in whom the estates are united to keep the mortgage alive, the law will not imply an intent to merge."

In *Tower* v. *Divine, supra,* the facts were quite similar to those here presented.    In 1869, Divine purchased from John W. Young and gave back a mortgage for $1,000.    In 1871, Divine gave a second mortgage to Tower.    In 1873, Divine gave a third mortgage to Mary J. Young.    In 1874, Tower foreclosed his second mortgage through chancery proceedings.    Before decree, he purchased the first mortgage from John W. Young and also secured a quitclaim deed from Divine, the holder of the legal title.    On behalf of Mary J. Young it was claimed—

"that the quitclaim by Divine and wife vested the legal title in complainants and caused a merger of their mortgage, and that they thenceforth held the premises subject to her mortgage and were not entitled to the rights of prior mortgagees."

The court said:

"The proof is very positive and distinct that the intention was that the right and relation of the complainants as mortgagees should be fully preserved. It was for their interest that the mortgage should be kept alive, and the rule of equity favors the intention and the claims of interest in such cases."

In a note to *Pugh* v. *Sample*, 39 L. R. A. (N. S.) 834 (123 La. 791, 49 South. 526), the authorities from other jurisdictions are collected and commented upon.

Defendant's purpose in foreclosing the third mortgage is apparent.    He thereby secured title to the 12 acres he had conveyed to Bunschoten with the 40 acres.    Before his deed became operative, the sale under plaintiff's foreclosure had been had.    Defendant could then have redeemed from such sale and become the owner of the 40 acres, unincumbered, or he could permit plaintiff to acquire title, subject to the Miller mortgage then held by him.    He chose the latter.    Clearly, he would not have done so had he expected that his rights under the Miller mortgage had been merged in the title acquired under his foreclosure deed.    His interests clearly required that the titles he held should be kept separate.    He testified that he so intended.    It follows that the Miller mortgage now owned by defendant is a lien on the 40 acres to which plaintiff's deed is subject.

The bill of complaint must therefore be dismissed, with costs of both courts to defendant.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.