FRANK *v.* APPLEBAUM.

1. MORTGAGES — FORECLOSURE — DEFICIENCY DECREE — MORTGAGOR'S GRANTEE.

Upon foreclosure, a mortgagee has a right to a deficiency decree against a party to whom the mortgagor has conveyed land mortgaged where grantee has agreed to assume and pay the mortgage.

2. SAME—FORECLOSURE—PARTIES.

In mortgage foreclosure suits in equity, all parties who, upon the face of the instruments involved, appear to be liable, may be brought into court to have their rights adjusted in a single suit.

3. SAME—FORECLOSURE — DEFICIENCY DECREE—EQUITABLE SUBROGATION.

Since there is no privity of contract between mortgagee and mortgagor's grantee, the right of the former to a deficiency decree against latter upon foreclosure is dependent upon latter's liability to mortgagor in undertaking to assume and pay the mortgage, the equitable subrogation inuring to mortgagee's benefit.

4. SAME—DEFICIENCY DECREE—TRUSTS—SYNDICATES—DEFAULT.

Grantee of mortgagor's interest, who assumed and agreed to pay mortgage *held*, not subject to deficiency decree where he acted as trustee or agent for beneficiaries named in trust instrument containing their agreement to indemnify him against all liability arising from holding title in his name and authorizing trustee to secure funds elsewhere upon default of syndicate members in meeting their proportionate share of payments due for mortgage, taxes and upkeep and subjecting such shares to liens for money so secured otherwise; and holders of mortgagor's interest obtained substantial shares in this syndicate, were in default in making their payments, and by trust instrument thereby precluded themselves from recovery against other beneficiaries.

BUTZEL and BUSHNELL, JJ., dissenting in part.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted June 19, 1934. (Docket No. 74, Calendar No. 37,839.) Decided March 5, 1935.

Bill by Harry Frank and Samuel Frank against Harry R. Applebaum and others to foreclose a mortgage. From decree of foreclosure against all defendants and deficiency against defendants Applebaum and Steingold only, plaintiffs appeal. Affirmed.

*George A. Cram* and *Seymour J. Frank* (*Wm. Henry Gallagher,* of counsel), for plaintiffs.

*Charles S. McDonald* and *Thomas F. Carson,* for defendant Proctor.

*Monaghan, Crowley, Reilley & Kellogg (Joseph B. Beckenstein,* of counsel), for defendants Mac-Donald, Wilber, Anderson, Souther, Sloan, Koether and Stewart.

*Pelton & McGee,* for defendants Colgrove, Tillotson and Buck.

NELSON SHARPE, J. On November 17, 1926, Julius Berman and his wife conveyed certain real estate in the township of Pontiac, in the county of Oakland, to the defendant Harry R. Applebaum, and on the same day Applebaum and his wife executed a mortgage thereon to Berman for $77,500 to secure the payment of a promissory note for that amount. On March 12, 1927, Berman assigned the mortgage and note to the plaintiffs, Harry Frank and Samuel Frank. In the meantime, nothing had been paid thereon. On September 15, 1927, Applebaum, for a consideration of one dollar and other valuable consideration, conveyed an undivided one-half interest in the land to the defendant Maurice Steingold, who therein assumed and agreed to pay one-half of the mortgage. On September 30, 1927, Applebaum and Steingold gave an option in writing for 14 days to Colgrove, Buck & Tillotson, a copartnership dealing in real estate, to purchase the land for the sum of $33,850, subject to the mortgage. On October 14, 1927, this firm wrote Steingold that they had clients who desired to purchase the property, and inclosed their check for $500 as a deposit thereon, and requested two weeks in which to complete the purchase. They stated therein:

"It is our intention in this matter that in the event our clients do not desire to take the full $33,350 remaining due, that you will leave an amount of whatever is necessary, up to $15,000, in the

syndicate being formed for the purchase of this property.''

In a reply thereto on the same day, Applebaum and Steingold stated that they would subscribe up to $7,500 in a syndicate taking over the property. On October 17, 1927, a subscription agreement was entered into between Colgrove, Buck & Tillotson, Applebaum, Steingold, and the other defendants. The subscribers thereto agreed to pay the sums set opposite their names in their signatures thereto, totaling $38,000, for a proportionate interest in the syndicate to be formed for the purpose of purchasing the land in question. The price was to be $111,350, of which $38,000 was to be paid at the time of purchase and the mortgage held by plaintiffs assumed for the balance thereof. Subscriptions were to be paid to L. E. Colgrove, trustee, and when the $38,000 was paid to him the syndicate should be considered organized and a deed of the property taken by him, subject to the mortgage. It further provided for the execution at that time of a ''trustee's agreement'' between the trustee and the subscribers, wherein the trustee should be authorized to make sale of the property upon the approval of subscribers of over 50 per cent. of the amount subscribed. The reason for the increase of $33,350 to $38,000 does not appear. The $38,000 was paid to Colgrove as trustee, and on November 2, 1927, Applebaum and Steingold, on receipt thereof, executed a deed of the real estate to Colgrove, subject to the mortgage which the grantee assumed and agreed to pay. At the same time an agreement and declaration of trust, hereafter particularly referred to, was executed by all of the members of the syndicate, who were designated therein as beneficiaries. There being default in the payment of the amount

due under the mortgage, the bill of complaint herein was filed by the plaintiffs on July 29, 1931, to foreclose it. The members of the syndicate were made defendants therein, and a personal decree prayed for against them in the event of a deficiency arising on the sale.

Upon the trial the right of the plaintiffs to a decree of foreclosure was not questioned, nor was there any dispute that the amount then due upon the mortgage was the sum of $82,916.92. The trial court entered a decree on July 17, 1933, for the sale of the land, with a provision that Applebaum was liable for the whole of. any deficiency arising therefrom and Steingold for one-half thereof, and dismissed the bill as to the other defendants. Plaintiffs have appealed therefrom, and insist that they were entitled to a decree for any deficiency upon the sale against all of the defendants.

The right of a mortgagee to a deficiency decree against a party to whom the mortgagor has conveyed the land that was mortgaged and who, in his deed therefor, has agreed to assume and pay the mortgage is well established in this State. *Anderson* v. *Thompson,* 225 Mich. 155. Equity will permit the bringing in of all of the parties who, upon the face of the instruments, appear to be liable, before the court to have their rights adjusted in a single suit. There is, however, no privity of contract between the mortgagee and the grantee, and the right of the former to such a decree is dependent upon the liability of the latter to the mortgagor in his undertaking to assume and pay the mortgage. In discussing this liability in *Higman* v. *Stewart,* 38 Mich. 513, 523, this court said:

"In this aspect the doctrine does not contemplate an obligation from the grantee to the mortgagee,

but a promise from the former to the mortgagor which may be caused to inure by an equitable subrogation to the mortgagee's benefit."

In *Barnard* v. *Huff,* 252 Mich. 258, 263 (77 A. L. R. 259), it was said:

"Primarily, of course, his" (the grantee's) "liability is to his own grantor or assignor, but it may inure to the benefit of the mortgagee or vendor."

"Under the statute, and the decisions under it, the liability must be one that could be sued independently at law as a legal obligation (*Johnson* v. *Shepard,* 35 Mich. 115, 123), and under the statute it must be a liability to pay the mortgage debt." *Vaughan* v. *Black,* 63 Mich. 215, 219, 220.

In *Strohauer* v. *Voltz,* 42 Mich. 444, the right of a grantor to recover from his grantee in such a case was upheld. On this rule of law the authorities seem to be in accord.

"The mortgagee's relief depends upon no original equity residing in himself, but upon the right of the mortgagor against his grantee, to which the mortgagee succeeds." 2 Jones on Mortgages (8th Ed.), § 944.

"Generally speaking, a mortgagee has no greater right than has the mortgagor against the purchaser of the mortgaged premises who agrees to pay the mortgage." 19 R. C. L. p. 378.

In a note in 21 A. L. R. 488, it is said:

"The holder of a mortgage can avail himself of no right, on an assumption of the mortgage, beyond what the mortgagor would have against his grantee; and if the mortgagor cannot enforce against the grantee a contract for the assumption of the mortgage debt, the mortgagee is likewise without remedy against him."

A number of cases are cited in support of the rule thus stated.

The question here presented is whether Applebaum, the mortgagor, and Steingold, to whom he conveyed a one-half interest in the land, if compelled to pay a deficiency arising upon the sale, would have a right of action to recover from Colgrove, the grantee in the deed, and from the parties to the subscription agreement and the trust agreement.

The trust agreement, in which Colgrove was named trustee and Applebaum and Steingold and all of the other subscribers to the subscription agreement were named as beneficiaries, recited the making of the subscription agreement and the execution of the deed, and that copies of both of them were annexed thereto and made a part thereof. It then provided that the interest of Colgrove as trustee in the land described in the deed was held by him for the beneficiaries as their interests were disclosed by the payments made by them pursuant to the subscription agreement, and that the trustee "shall hold and convey said lands in his own personal name and as though he were the sole owner thereof, insofar as his doings and dealings shall be with persons other than the beneficiaries."

Mr. Colgrove was a member of the firm of Colgrove, Buck & Tillotson, one of the parties to both of the agreements. The omission of the word "trustee" after his name as grantee in the deed was doubtless due to a desire to avoid any confusion which might arise in the conveyance of the property by him. In accepting the deed, and in the performance of his duties under the trust agreement, in which he was designated "trustee," he was acting but as an agent for all of the beneficiaries named in the agreement. It seems clear that no

personal liability to Applebaum and Steingold attached to him by reason of his name appearing as grantee in the deed. That it was so understood by all of the beneficiaries is apparent from the 13th paragraph of the trust agreement, which reads as follows:

"Said beneficiaries hereunder agree to indemnify the said trustee against all liability which may arise out of the holding of the title in the name of said trustee and/or in regard to any liability arising out of any contracts, conveyances, agreements or instruments of any kind signed by the parties hereto or any of them in connection with the purchase, holding and/or disposition of the property hereinabove described."

The trust agreement further provided that the beneficiaries should pay to the trustee on demand therefor their proportionate share of any moneys necessary to make the payments due under the mortgage and for taxes and upkeep of the premises, and that in default thereof by any beneficiary the trustee should "procure from whatever source he may be able to do so the amount thus required from said defaulting beneficiary," and that his interest would be "subject to diminution and impairment" thereby, and that in such event the sums so paid should be a lien upon his interest as a beneficiary.

The purpose of the subscription agreement was to secure the money to be paid to Applebaum and Steingold for the deed to be executed by them, and to designate the interest of the several subscribers in the property to be conveyed. The defendant MacDonald had paid in $7,600, Applebaum and Steingold $7,000, and the others amounts ranging from $1,900 to $3,800. Their rights as individuals were protected by the terms of the trust agreement, and any profit to be realized on the purchase of the

property was dependent upon each of them meeting the obligation assumed therein.

Applebaum made but one payment to the trustee; his share of the interest due on the mortgage on April 17, 1928. Steingold also made that payment and the one that matured in November of that year. Colgrove, under the provision therefor in the trust agreement, kept up the payments until May 17, 1930, and after that others defaulted and it appears that no further payments were made, and on that day, being in ill health, he and his wife conveyed the property to himself as trustee for all of the beneficiaries named in the trust agreement.

The interest of Applebaum and Steingold in the property was greater than that of any of the others except MacDonald. The trustee succeeded in obtaining contributions from the others for a time to make up for their default. The loss which they may sustain, if compelled to pay to the plaintiffs a deficiency arising upon the sale, is attributable, in part at least, to such default, and their neglect will preclude them from recovering from the other beneficiaries therefor.

It also may be said that decision might well rest upon the provision in the 11th paragraph of the trust agreement, which reads as follows:

"It is further similarly understood and agreed that no beneficiary hereunder shall resort to any court of law or equity in this or any other jurisdiction, to enforce any of the provisions of this trust agreement, or to cause partition or sale of the trust property, or to collect any alleged share or interest therein, if such beneficiary shall be in default as hereinabove provided, and that it shall be a condition precedent to the bringing of any action against any of the parties hereto that the beneficiary thus proceeding shall be in good standing hereunder according to the terms of this agreement; however,

upon liquidation of this trust in whole or in part each beneficiary shall have the right to take all necessary proceedings to maintain his beneficial interest therein.''

In view of the conclusion reached, it is unnecessary to consider the other questions presented.

The decree is affirmed, with costs to appellees.

POTTER, C. J., and NORTH, FEAD, and EDWARD M. SHARPE, JJ., concurred with NELSON SHARPE, J. WIEST, J., concurred in the result.

BUTZEL, J. (*dissenting in part*). I am only partially in accord with the foregoing opinion. The deed from Applebaum and Steingold ran to Colgrove individually. He assumed and agreed to pay the mortgage and thus became individually liable. After all members of the syndicate had defaulted, Colgrove gave a deed to himself as trustee for the members of the syndicate and in it referred specifically to the syndicate agreement and declaration of trust. The second deed was simply a redeclaration of the provision in the original trust agreement that all right, title and interest of the trustee as grantee in the warranty deed was held by him solely for the benefit of the syndicate members. The trust agreement contained no direct personal assumption of the mortgage by the members. It provided that in case of failure by the syndicate members to make the required payments when called upon by Colgrove, such payments might be secured from others, who should be compensated out of the interests of the defaulting members, the interests of the latter in the syndicate being decreased accordingly. This was the entire extent to which the contributions from the syndicate members to the mortgage payments could be enforced. In another clause the syndicate members agreed to in-

demnify the trustee against all liability which might arise out of the transaction. However, the ultimate liability of the members under this indemnity clause was not to be based upon the proportionate interests originally purchased by them, but was expressly limited to the proportion of ownership held by each at the date when such liability should be imposed. At most, the members agreed to indemnify Colgrove to the extent of their proportionate interests in the syndicate. Notwithstanding rather loose and inconsistent language in the first and fourth paragraphs of the preliminary subscription agreement, there was no direct assumption of the mortgage by the syndicate members, and none can be implied. See 3 Comp. Laws 1929, §§ 13281 and 13282.

Nor can the syndicate members be held liable as joint adventurers. In the deed executed by Applebaum and Steingold title was taken, and the mortgage assumed by Colgrove individually. The provisions of the trust agreement above noted indicated that the parties intended that the assumption of the mortgage by Colgrove in his own name was to be his own individual act, and not that of the syndicate members. Since Applebaum and Steingold, as members of the syndicate, were parties to the trust agreement, they are bound by this intention as expressed in the agreement, and the mortgagees can have no greater right. *Williams* v. *Gillies,* 75 N. Y. 197. I therefore believe that there was no assumption of the mortgage by the syndicate members, and that they cannot be held liable.

However, Colgrove, who expressly assumed and agreed to pay the mortgage, is liable. I cannot agree with Justice Nelson Sharpe that the failure of Applebaum and Steingold, as syndicate members, to contribute their proportionate share of the sums required for the mortgage payments, destroyed

their right, as grantors of the property under the deed of conveyance, to enforce against Colgrove the mortgage assumption agreement contained in that deed. When the deed was executed, Colgrove made the down payment of $38,000, as agreed, and paid the balance of the purchase price by the assumption of the $77,500 mortgage. At the same time Applebaum and Steingold took a 7/38 interest in the syndicate, in response to Colgrove's earlier request that this be done in the event his clients should not desire to subscribe for the full amount of the agreed down payment. Colgrove thus received the full consideration for his assumption agreement. At the time of the trial, Colgrove did not recall whether Applebaum and Steingold actually paid to him the amount of their subscription, and then received back from him the entire amount of the cash down payment, or whether the subscription was simply a bookkeeping entry. However, it would appear that what actually took place was that while Colgrove took a deed to the entire property and assumed the entire mortgage, 7/38 of the down payment was represented by Steingold and Applebaum's retention of that proportionate interest in the syndicate. As members of the syndicate, they agreed to pay to Colgrove, when called upon, their proportionate share of the sums due on the mortgage, or, in the event of their failure to make such payments, to suffer a corresponding diminution of their interest in the syndicate. Applebaum and Steingold were the first parties to default, but the amounts due from them were, for a time, contributed by others, so that they were released from the liability to that extent, and their interest was decreased proportionately in accordance with the terms of the trust agreement. By the express terms of that agreement, their liability for the failure to make such

contribution was limited, in common with that of all other syndicate members, to the corresponding reduction of their interest in the syndicate. I do not believe it follows that in addition to this Applebaum and Steingold incurred the loss of their right to enforce against Colgrove the mortgage assumption agreement for which the latter received full consideration when the property was conveyed to him. It should be noted that in 1930, when the final default took place, not only Applebaum and Steingold, but all other members of the syndicate had defaulted.

I therefore believe that the deficiency decree should run against Colgrove, but subject to this qualification: Should Applebaum and Steingold pay the deficiency, and then recover from Colgrove under the assumption agreement, the latter could secure indemnity from them for his loss, under the terms of the trust agreement, to the extent of their proportionate interest in the syndicate at the time the liability was imposed. Therefore, under the rule that in an equity action brought by the mortgagee to recover a deficiency judgment against the assuming grantee, the latter is entitled to raise against the mortgagee any defenses which he could raise against the grantor, the deficiency decree against Colgrove should be decreased by the amount of Applebaum and Steingold's proportionate interest in the syndicate at the time of this decree.

The case should be remanded to the trial court for taking such further testimony as may be necessary and entering a decree in accordance with this opinion. Plaintiffs should recover costs from defendant Colgrove, and the defendants, other than Colgrove, Steingold and Applebaum, should recover their costs from plaintiffs.

BUSHNELL, J., concurred with BUTZEL, J.