# STATE OF MICHIGAN

# COURT OF APPEALS

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

Plaintiff-Appellee,

v

LI-MING HSIUNG,

Defendant/Crossplaintiff-Appellant,

and

TRADEMARK PROPERTIES OF MICHIGAN,
LLC,

Defendant/Crossdefendant.

UNPUBLISHED
November 19, 2015

No. 325178
Oakland Circuit Court
LC No. 2013-136895-CH

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

In this action to quiet title relative to a condominium unit, defendant Li-Ming Hsiung appeals as of right the trial court's order granting summary disposition in favor of plaintiff Federal National Mortgage Association (Fannie Mae) pursuant to MCR 2.116(C)(10) and denying Hsiung's competing motion for summary disposition. We reverse and remand for entry of an order granting summary disposition and quieting title in favor of Hsiung.

In 2008, George Stahl purchased the condominium unit at issue ("the property") and executed a mortgage that was held by Mortgage Electronic Registration Systems, Inc. (MERS). In 2009, Stahl stopped paying condominium association dues to North Hill Condominium Association ("the Association"), giving rise to a lien being recorded on the property, foreclosure of the lien, and eventually a sheriff's sale that was conducted in March 2010, where the Association purchased the property for $6,120. The sheriff's deed was dated March 16, 2010, and it was recorded two days later on March 18th. The sheriff's deed provided that the redemption period would expire six months from the date of sale (September 16, 2010), unless the property was determined to be abandoned, in which case the redemption period would expire in 30 days from the date of sale. There was no indication of abandonment. In April 2010, MERS assigned the mortgage to Chase Home Finance, LLC (Chase). As reflected in email communications and affidavits by counsel, Chase engaged in discussions with the Association, arguing over priority as between the mortgage and the foreclosed-upon condominium lien.

-1-

Chase indicated its desire to now foreclose on the mortgage, as apparently Stahl had also stopped paying his mortgage. Nothing came of the discussions, and Chase did not pursue foreclosure of the mortgage. Thereafter, in August 2010, the mortgage held by Chase was assigned to Fannie Mae, with Fannie Mae recording the assignment of mortgage on September 9, 2010, which was a week before the redemption period expired relative to the Association's foreclosure.

Fannie Mae and the Association then became entangled in a dispute over the priority of their respective interests in the property.[1] According to an averment in an affidavit executed by an attorney representing Fannie Mae, she communicated to the Association's counsel that Fannie Mae wished to redeem the property relative to the Association's purchase of the property at the March 2010 sheriff's sale. Counsel further asserted that the Association "agreed to accept funds by my client [Fannie Mae] and allow a late redemption of the March 16, 2010 condo lien foreclosure." Counsel additionally averred that she was contacted by the Association's attorney on October 1, 2010, and advised that the Association had "received redemption funds" from Fannie Mae and was "preparing a quit claim deed to Fannie Mae in exchange." A quitclaim deed dated October 1, 2010, was executed by the Association, conveying the property to Fannie Mae, and it was eventually recorded on November 10, 2010. The quitclaim deed provided that it was "intended to convey only the interest of the grantor[, i.e., the Association] obtained by virtue of [the] Sheriff's Deed in its favor." The quitclaim deed also indicated that it was "subject to any and all Condominium Documents[.]" The quitclaim deed was silent with respect to whether Fannie Mae's mortgage was extinguished or whether it survived the conveyance. In the affidavit by Fannie Mae's attorney, she claimed that "there was no intention between the parties that the March 16, 2010 condo foreclosure redemption would constitute a discharge or elimination of Fannie Mae's Mortgage."

We note that, given the expiration of the redemption period in mid-September 2010, absent redemption by Stahl or anyone, title to the property had fully vested in the Association under the sheriff's deed, subject to Fannie Mae's senior mortgage. See MCL 559.208(2) (generally applying the law regarding foreclosure by advertisement or judicial foreclosure to lien foreclosures involving condominiums); MCL 600.3236 (effect of failure to redeem in foreclosure by advertisement);[2] *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App

---

[1] It appears that counsel for Chase was also counsel for Fannie Mae.

[2] MCL 600.3236 provides:

> Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, except as to any parcel . . . which may have been redeemed and canceled, as hereinafter provided, and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby.

252; 827 NW2d 379 (2012) (the Condominium Act, MCL 559.101 *et seq.*, gives priority to a first mortgage of record over a condo lien if recorded before the condo lien, and the subsequent assignment of the first mortgage, even after the condo lien is recorded, does not affect its priority). The point of contention in this litigation concerns whether Fannie Mae, while indisputably obtaining a fee simple interest in the property by way of the quitclaim deed, also retained its preexisting mortgage interest, or whether that interest was extinguished under the doctrine of merger. See *Anderson v Thompson*, 225 Mich 155, 159; 195 NW 689 (1923) (generally speaking, when the holder of a real estate mortgage becomes the owner of the fee, the mortgage interest or estate is merged into the fee estate).

Condominium dues were not paid by Fannie Mae, despite its ownership of the property, resulting in an accumulated debt of $1,339, a new lien on the property being recorded, and, once again, foreclosure proceedings by the Association. A sheriff's sale was scheduled for May 17, 2011. A few days before the scheduled sale, Fannie Mae notified the Association that it intended to foreclose on its purported surviving mortgage on the property, scheduling its own sheriff's sale for June 14, 2011. Of course, if there had been a merger of Fannie Mae's mortgage interest into the fee estate when the quitclaim deed conveyed the property to Fannie Mae from the Association, Fannie Mae would have had no mortgage to foreclose upon. Thus, Fannie Mae was necessarily proceeding on the basis that there had been no merger. The Association, unfazed, followed through with its sheriff's sale, and the property was purchased by defendant Trademark Properties of Michigan, LLC (Trademark) for $5,773. Trademark recorded the sheriff's deed on May 24, 2011. Subsequently, Fannie Mae, also unfazed, proceeded with its sheriff's sale on the property, resulting in Fannie Mae purchasing the property for $153,483.[3] Fannie Mae's sheriff's deed was recorded on June 14, 2011.

Later, Trademark contemplated selling the property to Hsiung, but it was aware of Fannie Mae's sheriff's sale and the associated sheriff's deed purportedly conveying the property to Fannie Mae. This problem resulted in a series of email communications between counsel for Trademark and counsel for Fannie Mae. In the final email sent by Fannie Mae's attorney,[4] she stated that Fannie Mae "has agreed that [it is] no longer in title to the property," that Fannie Mae "agree[s] that the condo lien foreclosure wiped out [its] interest in the property," that Fannie Mae "ha[s] no interest to deed at this point," that Fannie Mae "will not be issuing a quit claim deed," and that "Trademark is in title to the property at this point." In reliance on this email, which Fannie Mae's counsel subsequently averred was taken out of context and not intended by her to clear title, but which left Trademark, Hsiung, and the title company willing to proceed, Trademark sold the property to Hsiung for $95,000 in May 2012 pursuant to a covenant deed that was recorded on June 19, 2012. Accordingly, at this stage, there were recorded deeds that reflected conflicting ownership interests as between Hsiung and Fannie Mae.

In October 2013, Fannie Mae brought the instant lawsuit against Trademark and Hsiung, seeking to quiet title in its favor. Fannie Mae alleged that its mortgage interest had been senior to all subsequent liens and deeds. Fannie Mae further contended that when it foreclosed on the

---

[3] According to the affidavit of posting relative to the foreclosure, Stahl was in default of the mortgage and owed, upon acceleration of the debt, $144,601.

[4] This is not the same Fannie Mae attorney referenced earlier in this opinion.

property in June 2011 and the period of redemption expired, any and all junior interests and liens were extinguished. As such, Trademark had no interest in the property in 2012 to convey to Hsiung, and Hsiung therefore had no interest in the property. Hsiung filed a crossclaim against Trademark for breach of the covenant deed that had conveyed the property from Trademark to Hsiung. But Hsiung eventually stipulated to the dismissal of her crossclaim without prejudice, expressly preserving any available claims against Trademark dependent upon the outcome of Fannie Mae's action. Shortly thereafter, a stipulated order was entered dismissing Fannie Mae's suit against Trademark without prejudice, leaving only Fannie Mae and Hsiung to continue the litigation.

Fannie Mae and Hsiung next filed opposing motions for summary disposition. Fannie Mae maintained that it held the senior interest in the property and that all other interests had been extinguished. Hsiung argued that Fannie Mae's mortgage had been extinguished under the merger doctrine when Fannie Mae acquired title from the Association pursuant to the quitclaim deed following the Association's initial foreclosure effort. Fannie Mae insisted that the merger doctrine did not apply, given that it fully intended for the mortgage to survive, concurrent with Fannie Mae holding title to the property under the quitclaim deed. Hsiung responded that Fannie Mae had never exhibited such an intent, and even if it had, because third parties would be negatively affected should the merger doctrine be disregarded, merger was required and Fannie Mae's purported mortgage was extinguished. Hsiung also asserted the equitable defenses of estoppel, unclean hands, and waiver, relying on Fannie Mae's counsel's email disclaiming an interest in the property.

The trial court found that Fannie Mae's interest and intent in sustaining the mortgage exempted Fannie Mae from the merger doctrine. The trial court further ruled that because Hsiung had record notice of Fannie Mae's interests in the property (ownership and mortgage), Hsiung's equitable defenses were unavailing. Accordingly, the trial court granted summary disposition and quieted title in favor of Fannie Mae and denied Hsiung's motion. Hsiung filed a motion for reconsideration on the basis of this Court's newly-released opinion in *Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92; 850 NW2d 649 (2014). Fannie Mae argued that the case was factually distinguishable and therefore not controlling. The trial court agreed with Fannie Mae and denied the motion for reconsideration.

This Court reviews de novo a trial court's ruling on a motion for summary disposition, *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013), as well as equitable rulings, including quiet-title determinations, *Richards v Tibaldi*, 272 Mich App 522, 528-529; 726 NW2d 770 (2006). With respect to the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), stated:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record,

giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

Hsiung first argues that Fannie Mae's claimed mortgage interest in the property was extinguished under the merger doctrine. We agree. In *Anderson*, 225 Mich at 159, our Supreme Court observed:

There is no doubt about the general rule that when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter. This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby. [Citation omitted.]

This Court has quoted and relied on the above-passage from *Anderson* in *Byerlein v Shipp*, 182 Mich App 39, 48; 451 NW2d 565 (1990), and *Heritage Village*, 305 Mich App at 105. With respect to intent, the Michigan Supreme Court in *First Nat'l Bank of Utica v Ramm*, 256 Mich 573, 575; 240 NW 32 (1932), explained:

The intention is controlling. It is either expressed or is implied from the circumstances of the transaction. If it is to the interest of the mortgagee to keep the mortgage alive, the intention to do so will be implied; for it is presumed that a man intends to do that which is to his advantage. But if the intention to merge the estates is expressed, the fact that it is to his benefit to keep the mortgage alive is immaterial. [See also *Heritage Village*, 305 Mich App at 105.]

When considering whether a party intended to keep a mortgage alive, this Court is concerned with the intent at the time of the transaction. *Heritage Village*, 305 Mich App at 105.

Fannie Mae did not expressly indicate an intent to keep the mortgage alive; therefore, it must be determined whether such an intent can be implied from the circumstances of the transaction, including whether it was in Fannie Mae's interest to keep the mortgage alive. We conclude that there is no basis to find that it was in Fannie Mae's interest to have the mortgage survive once Fannie Mae obtained its fee interest. Stahl's ownership interest in the property had been entirely extinguished when the redemption period expired, resulting in title vesting in the Association. MCL 559.208(2); MCL 600.3236. And, upon the issuance of the quitclaim deed by the Association, Fannie Mae acquired title to the property, unencumbered by any other interests or liens at that point, rendering Fannie Mae's mortgage irrelevant. There was simply no valid interest that was in need of protection via retention of the mortgage at the time of the transaction, which is when intent is gauged.

Because Fannie Mae's mortgage relative to Stahl had not been in foreclosure when the Association deeded the property to Fannie Mae, Fannie Mae argues that "the potential existed for George Stahl to resume his regular course of monthly payments." This argument borders on the

absurd, as it suggests that Stahl would have made payments on the property with respect to which he no longer held title or had a right to possess. Moreover, assuming that Stahl were to have made payments, it would in no way have negatively affected Fannie Mae's interests, nor would such payments have to have been categorized as "mortgage" payments, as opposed to simply constituting payments on the promissory note. Fannie Mae further argues that "[k]eeping the mortgage alive also kept alive the potential for debt repayment, thus merger cannot be implied." Fannie Mae, apparently, is of the view that retaining the mortgage would have given it some leverage in regard to making Stahl pay on the underlying promissory note; we fail to see any logic in this argument. Again, Stahl's ownership and possessory interests were extinguished, and Fannie Mae threatening him with foreclosure of a mortgage on property that it now owned seems nonsensical. A foreclosure in that context would have resulted in Fannie Mae purchasing property it already owned at a sheriff's sale for the total amount of the mortgage debt, which eventually did occur, or a third party purchasing the property, which could have been accomplished by Fannie Mae simply selling the property on its own absent any foreclosure or sheriff's sale. Additionally, Fannie Mae, upon obtaining ownership of the property from the Association on October 1, 2010, presumably could have still sued Stahl on the promissory note itself and/or for damages related to the payment made to the Association for the quitclaim deed, regardless of the mortgage being extinguished.

Next, Fannie Mae argues that "implying merger runs afoul of George Stahl's equities," and that "[o]nly a mortgagor [here Stahl] can surrender his equity of redemption to the mortgagee." The fatal flaw in this argument is that, considering the Association's foreclosure proceedings against Stahl, the sheriff's sale, and the expiration of the redemption period in September 2010, Stahl had effectively surrendered his equity of redemption; title vested in the Association. There was no surviving "equity of redemption" rights held by Stahl relative to Fannie Mae's subsequent sheriff's sale in June 2011.

Further, the circumstances surrounding the transaction between the Association and Fannie Mae did not give rise to an implication of an intent to have the mortgage survive. The fact that Fannie Mae did not execute and record a discharge of lien is, in our view, irrelevant, given that Fannie Mae had bought the property under deed, effectively resulting in the discharge of the lien under the merger doctrine, and making it unnecessary and redundant to prepare and record a discharge. Moreover, under the circumstances, it would have been ludicrous for *the Association* to have intended for the mortgage to survive, considering that, with Fannie Mae obtaining title to a condominium unit and thus becoming obligated to pay condominium fees or assessments, the Association's ability to effectively utilize a lien for nonpayment would have been compromised. The quitclaim deed had indicated that it was "subject to any and all Condominium Documents[,]" which certainly included documents pertaining to the obligation to pay fees and assessments under threat of foreclosure. This matter is explored in greater detail below.

In sum, there was no expressed intent to keep the mortgage alive and it cannot be implied under the circumstances of the transaction between the Association and Fannie Mae. Moreover, even if we ruled otherwise with respect to intent and interest, this Court's recent decision in *Heritage Village*, which is binding authority, demands reversal in this case, because the rights of a third party would have been affected if merger did not take place. Again, the merger doctrine is "subject to the exception that when it is to the interest of the mortgagee and is his intention to

-6-

keep the mortgage alive, there is no merger, *unless* the rights of the mortgagor or third persons are affected thereby." *Anderson,* 225 Mich at 159 (emphasis added).

*Heritage Village* involved a 205-unit condominium complex, of which Winnick Heritage Village, LLC (Winnick) owned 150 units. *Id*. at 96. Of those 150 units owned by Winnick, Fifth Third Bank held a recorded mortgage on 76 units. *Id*. at 96-97. Later, Fifth Third Bank assigned its mortgage interests in the 76 units to Warren Financial Acquisitions, LLC (Warren). *Id*. at 97. Shortly thereafter, Winnick "conveyed the 76 units to Warren by covenant deed, which provided that the transfer was 'without merger of the Mortgage[,]'" resulting in, from all appearances, Warren holding both the fee and the mortgage on each of the 76 units. *Id*. Subsequently, the plaintiff condominium association recorded a lien against Warren for unpaid association assessments. *Id*. The condominium association instituted the action to collect $205,884 in assessments and for judicial foreclosure of the lien. *Id*. After the litigation had commenced, Warren assigned the mortgages to Reserve Mortgage Holding, LLC (Reserve). *Id*. While the case was underway, Reserve moved to intervene, arguing that it had "commenced foreclosure proceedings against Warren" and that, in lieu of a foreclosure sale, "Warren executed a waiver of statutory and equitable rights of redemption to Reserve." *Id*. at 98. Upon that waiver, Reserve contended that its foreclosure proceeding had effectively "extinguished all encumbrances" held by the condominium association. *Id*. The condominium association, however, argued that when Warren took title to the 76 condominium units, prior to which it had been assigned the mortgages on those very same units, the merger doctrine worked to extinguish the mortgages on the property, regardless of the nonmerger language in the covenant deed conveying the units. *Id*. at 100-101. "The trial court concluded that the parties intended to keep the mortgage alive and, at the time of the conveyance from Winnick to Warren there were no assessments due. Accordingly, it found that at the time of the conveyance containing the nonmerger clause, the nonmerger had no effect on the rights of third parties." *Id*. at 101.

This Court reversed the trial court's decision, reasoning that "the purpose of the exception to the general merger rule . . . does not apply in this case because Warren is not seeking to protect itself from the claims of junior lienholders for debts incurred by Winnick[,]" but rather was attempting to avoid paying the required association fees to the condominium association relative to the 76 units. *Id*. at 108-109. Further, the *Heritage Village* panel held that "the time for considering the effect on a third party is not limited to the time of the transaction." *Id*. at 109. In sum, this Court ruled:

> In conclusion, despite the express intent to keep the mortgage alive, there was a merger of the mortgage and the fee title because a finding of nonmerger would affect the rights of plaintiff. Because the fee and the mortgage merged, Warren could not foreclose on the mortgage. The trial court abused its discretion by ordering that Warren could foreclose. We remand for the trial court to vacate and set aside Warren's foreclosure and the subsequent sale. [*Id.* at 109-110 (citation omitted).]

The same decision is mandated in this case. Regardless of Fannie Mae's intent, the Association's rights, as a third party, were affected when Fannie Mae took title to the property, assuming Fannie Mae's retention of the mortgage on the property. Indeed, those rights were identical to those affected in *Heritage Village,* in that, absent application of the merger doctrine, the Association would have been left with no effective recourse by way of foreclosure and a

sheriff's sale to collect unpaid association fees indisputably owed by Fannie Mae. Indeed, Fannie Mae sought to undermine the Association's May 2011 foreclosure efforts by foreclosing on its own alleged surviving mortgage, which, if recognized, was superior to the condominium lien.

Fannie Mae argues, however, that actual satisfaction of the Association's lien via the sheriff's sale to Trademark, factually distinguishes this case from *Heritage Village*. In other words, because the Association was eventually paid by Trademark at the sheriff's sale, the Association's rights were not ultimately affected, contrary to the condominium association's rights in *Heritage Village*, where the association there was not paid for outstanding dues or fees. The difference between the two cases, which is ultimately irrelevant, concerns the mode of foreclosure and timing. In *Heritage Village*, the condominium association pursued judicial foreclosure, MCL 600.3101 *et seq.*; therefore, the litigation took place at a point in time when there had yet to be a foreclosure or sheriff's sale, which could have produced a purchaser to satisfy the condominium-fee debt. Here, the Association utilized foreclosure by advertisement, MCL 600.3201 *et seq.*, and the litigation was commenced after a sheriff's sale was conducted and the lien was satisfied. First, we find no basis to find that had the *Heritage Village* panel been confronted with comparable circumstances, its analysis and ruling would have differed. Most importantly, Fannie Mae wholly fails to appreciate that, if merger indeed does not apply as so adamantly argued by Fannie Mae, the Association would in fact have been absolutely stymied in regard to the condo-lien foreclosure that produced the payment from Trademark at the sheriff's sale, considering that Fannie Mae's superior interest and its sheriff's sale would have governed and blocked recovery by the Association.

Fannie Mae also attempts to distinguish the instant case by essentially arguing that the principles espoused in *Heritage Village* are only applicable when the third party whose rights were affected is directly involved in the litigation and seeking to protect those rights. Because nothing in the opinion in *Heritage Village*, nor the rule announced years ago by our Supreme Court in *Anderson*, requires such a limited reading of the affected-third-party exception, we disagree. The proper analysis is merely concerned with whether a third-party's rights were affected, not with whether the affected third party was involved in the litigation and raised the matter.

Lastly, Fannie Mae argues that because it did not receive the deed from the mortgagor in lieu of foreclosure, the merger doctrine was inapplicable. A plain reading of the merger doctrine or rule clearly reflects no such requirement, as it simply provides that "when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter." *Anderson*, 225 Mich at 159; see also *Heritage Village*, 305 Mich App at 105.

In sum, pursuant to *Heritage Village*, we hold that when Fannie Mae was conveyed the property under the quitclaim deed executed by the Association, while simultaneously holding the mortgage on the property, the merger doctrine was implicated, with the fee and mortgage merging, resulting in the mortgage on the property being extinguished. "When once extinguished it [was] gone forever." *First Nat'l Bank*, 256 Mich at 577. At that stage, Fannie Mae was standing in the same shoes as any other owner of a condominium unit, absent any lien or mortgage interest. Therefore, when the Association's second lien foreclosure or sheriff's sale was finalized and the period of redemption expired absent redemption, Trademark became vested with sole, unencumbered title to the property. See MCL 559.208(2); MCL 600.3236.

Fannie Mae had no mortgage interest to foreclose upon when it conducted its own sheriff's sale in June of 2011. Accordingly, Trademark's conveyance of the property to Hsiung by covenant deed was legally sound, giving Hsiung unclouded fee simple title to the property. And there is no genuine issue of material fact on the matter. Therefore, we reverse the trial court's decision granting summary disposition in favor of Fannie Mae and remand the case to the trial court for entry of an order granting summary disposition and quieting title in favor of Hsiung. Because we have decided this case on the issue of merger, we need not examine Hsiung's alternative equitable defenses.

Reversed and remanded for entry of an order granting summary disposition to Hsiung. We do not retain jurisdiction. Hsiung, having fully prevailed on appeal, is awarded taxable costs pursuant to MCR 7.219.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan