YELVERTON, Judge.
Plaintiff, James Lysinger, brought suit against Security Industrial Insurance Company (Security), seeking past due wages, interest, penalties and attorney’s fees under the provisions of LSA-R.S. 23:631 and 632. From a judgment in favor of the plaintiff for $78.92 for past due commissions owed, $1,169.50 in penalties, $650 for attorney’s fees, and legal interest, the defendant appeals. We affirm.
On December 12, 1983, plaintiff signed an employment form with Security, part of which is here duplicated:
[[Image here]]
This instrument was approved by Security’s local district manager, Andre Hunt, and by its Agency Director, Sidney Harp. This form provided that plaintiff was to be compensated by a 16% commission on all collections during the first month of employment. After the first month he would then be subject to the terms and provisions of the standard company contract. Certain lapses and shortages in the collecting of premiums could be deducted from the agent’s commission. However, during the first month of employment no lapses would be deducted from the agent’s commission. The plaintiff voluntarily terminated his employment with Security on January 13, 1984. Plaintiff’s employment duties consisted of collecting premiums on policies already in existence and selling new insurance. The exhibits reveal plaintiff collected $2,159.28 in premiums under existing insurance policies for December 1983 and $1,626.47 in premiums under existing insurance policies for January 1984. The evidence also reveals that plaintiff sold new insurance during these months. Plaintiff testified that he only collected $24.63 in new business and sold the other policies on credit without collecting any premiums.
Plaintiff received payment from the defendant of only $530.40 in December. Af *355 ter repeated demands for payment of January commissions were denied by defendant, the plaintiff filed the instant suit.
At trial the plaintiff testified that the employment form and standard agency contract did not contain all the agreement concerning commissions which he was entitled to receive. Plaintiff testified that Hunt, the district manager, informed him that he would receive 16% commission on all sums collected from people having existing insurance during the first month, and 18% commission after the first month. He said Hunt also informed him that he would receive a 10% commission on all new business sold by the plaintiff, even when the plaintiff sold the insurance (the first premium) on credit. Mr. Hunt, according to plaintiff, instructed him to take applications on credit, since this was the Christmas season and people did not have money to spend on premiums. Mr. Hunt told plaintiff that he would be immediately credited with the premiums from such policies even though they delivered and the premiums were to be collected later. Plaintiff explained that the first month of his employment was only until the end of December, and that the standard agency contract was to be effective January 1,1984. Plaintiff testified that Security did not explain to him why he never received his January commission check.
Freddie Berry, a former staff manager for Security, testified that plaintiff was an agent under her supervision. She corroborated plaintiff’s testimony that he was to receive 16% commission on first month’s collections and 10% commission on all new business sold. She also stated that Mr. Hunt had instructed the agents to sell insurance on credit and had told them they would be paid even though the premiums had not been collected. She further added that Mr. Hunt had informed them to subsequently deliver the policies and collect the premiums. She stated that Mr. Hunt had the authority to make such a decision. She knew that in February 1984 plaintiff demanded his 16% commission on his January commissions and the agency refused to pay him.
R.B. Lutrell testified that he was a former staff manager for Security and that an agent is not charged for any lapses his first 30 days of employment. Further testimony revealed that his superiors also advised agents to sell insurance on credit.
Sidney Harp, the agency Vice President for Security, testified that during the first month an agent is not responsible for any lapses. The “first month” means the first 31 days, after which the regular contract becomes effective. Since the plaintiff’s employment was only 31 days, the regular company contract never became effective. The plaintiff should have been paid 16% commission on all collections including premiums collected on new policies and no lapses should have been deducted from the commission. New agents are not paid 10% commission on new policies sold. The company paid plaintiff $530.40 in December, which was an overpayment of $186.97. He stated the company paid plaintiff 16% commission on all new business and collections. The reason plaintiff did not receive a January paycheck was due to the overpayment plaintiff received in December and due to certain shortages being deducted from plaintiff’s pay. The shortages in the amount of $203.88 resulted from plaintiff selling insurance on credit and not collecting the premiums.
Andre Hunt, the district manager, in his testimony denied telling plaintiff that he would receive a 10% commission on new policies sold and denied telling plaintiff to sell policies on credit. He testified that the reason plaintiff did not receive payment for1 his January commissions was because certain lapses were deducted from his pay. He stated that lapses were deducted from plaintiff during his first month’s employment.
Based on this evidence, the trial court found that plaintiff was in the employment of Security for only one month and that the standard company contract was not effective, therefore, plaintiff was entitled to a 16% commission on collections of existing policies without deducting any lapses. The *356 trial court also determined that plaintiff was entitled to a 10% commission on new business without charging any shortages to the plaintiff for failing to collect the premiums. The trial court found that plaintiff earned $609.32 in commissions during his employment and that the defendant paid plaintiff only $530.40, resulting in a $78.92 underpayment in commissions. Finding defendant arbitrary in refusing to pay plaintiff, the trial court awarded penalties and attorney’s fees.
The issues are: (1) whether the trial court erred in finding plaintiff was entitled to commissions; (2) whether the trial court erred in failing to recognize the setoff for “shortages” created by the plaintiff in accepting applications on credit; and (3) whether the trial court erred in awarding penalties and attorney’s fees.
LSA-R.S. 23:631 reads:
“§ 631. Discharge or resignation of employees; payment within three days after termination of employment
“A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee’s or laborer’s current address as shown in the employer’s records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.”
“B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.
“C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.”
LSA-R.S. 23:632 reads:
“§ 632. Liability of employer for failure to pay; attorney fees
“Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.”
The defendant argues that the trial court should not have awarded plaintiff a 10% commission on sales of new business, since most of the premiums were never collected and since the employment form only provided for a 16% commission on collections, not a 10% commission on uncollected premiums. Defendant argues that even accepting plaintiff’s testimony as true that Hunt advised him that he would be given a 10% commission for sales of policies on credit, Hunt had no authority to vary the terms of the employment form.
According to defendant’s argument and the testimony of Sidney Harp, plaintiff would be entitled to a 16% commission on all collections including premiums collected on the sale of new policies. The exhibits *357 accurately reflect that plaintiff collected $2,159.28 for December and $1,626.47 for January in premiums under existing insurance policies. The total amount of premiums collected multiplied by 16% entitled plaintiff to $605.72 in commissions for collection of premiums under existing policies. The evidence also reveals that plaintiff collected $24.63 in premiums for the issuance of new policies. This amount multiplied by 16% entitled plaintiff to $3.94 in commission. Therefore, even under defendant’s argument plaintiff was entitled to $609.66 in commissions for his employment. The trial court’s calculations found plaintiff was entitled to $609.22. We find no merit in these arguments.
The defendant also argues that the trial court erred in failing to recognize the setoff for “shortages” created by the plaintiff in accepting applications on credit. The trial court in his written reasons for judgment accepted the testimony of plaintiff and other witnesses that plaintiff was instructed by Mr. Hunt to sell insurance on credit, and that these premiums would be credited to plaintiff as if they had been collected. A trial court’s conclusions of fact and evaluation of witnesses must be given great weight and should not be disturbed unless clearly wrong. Mitchell v. Poullard, 422 So.2d 713 (La.App. 3rd Cir. 1982). Under these facts we find that whatever “shortages” occurred were created solely by the defendant, therefore the trial court was correct in refusing to set off the amount due to plaintiff by these “shortages.”
Defendant also argues that the trial court erred in awarding penalties and attorney’s fees under LSA-R.S. 23:632, since the defendant was not motivated by bad faith or found to have acted in an unreasonable manner in failing to pay wages following the termination of employment. As this court stated in Powell v. Flotation Services, Inc., 413 So.2d 276 (La.App. 3rd Cir. 1982), writ denied, 415 So.2d 941 (La.1982):
“LSA-R.S. 23:632 is a penal statute and therefore must be strictly construed. Equitable defenses are available and penalty wages are not to be absolutely imposed irrespective of circumstances. Doucet v. Plantation Manor, Inc., 382 So.2d 984 (La.App. 1st Cir.1980). In order for an employer to be liable for penalty wages, the employer must have been motivated by bad faith or must be found to have acted in an arbitrary or unreasonable manner. It is only a ‘good faith non-arbitrary defense to liability for unpaid wages; i.e., a reasonable basis for resisting liability’ which will permit the courts to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee’s Equipment Co., 364 So.2d 555 (La.1978); Letulle v. S & E Oil Co., Inc., 387 So.2d 703 (La.App. 3rd Cir. 1980).”
With these principles before us, we must examine the facts to determine if Security acted in an arbitrary or unreasonable manner in withholding plaintiff’s pay.
Mr. Harp testified that the plaintiff was owed $245.85 in commissions for January collections. Security made out a check in this amount to plaintiff, but the check was never given to him. There were three reasons given by the company for failing to pay this amount. First, the company took the position that it had overpaid plaintiff by $186.97 in December. However, this would not excuse paying plaintiff the difference between the amount owed for commissions and the amount of the alleged overpayment ($58.88). The other two reasons given by Security were in conflict. Mr. Hunt stated that plaintiff was not paid his January commissions because of lapses which were deducted from his commission. The evidence is thus clear that plaintiff’s first month of employment was lapse free, that no lapses were to be deducted from his pay. Conflicting with Mr. Hunt’s testimony, Mr. Harp stated that no lapses were deducted from his pay, but only shortages created by plaintiff selling insurance on credit were deducted. We have already determined that these shortages were created by the policy of Security in instructing their agents to sell on credit and that such shortages could not be used as a setoff by *358 Security. It is clear from the evidence that Security knew that plaintiff was owed at least $58.88 in commission. Security failed to present a “good faith non-arbitrary defense” to liability for unpaid wages. Under these facts we find the trial court was correct in awarding penalty wages under LSA-R.S. 23:632.
Defendant also complains about the amount of attorney’s fees awarded ($650). Considering the time and detail involved in the case, this award was not an abuse of discretion.
In appellee’s brief he seeks an increase in attorney’s fees for defending this appeal. However, the appellee has neither answered nor appealed from the trial court’s judgment, therefore this court may not grant an additional amount of attorney’s fees for legal services rendered on appeal. C.C.P. art. 2133; Bank of Logansport v. Sewell, 467 So.2d 1217 (La.App. 2nd Cir.1985), and cases cited therein.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.